FIRE INSURANCE EXCHANGE, Plaintiff-Appellant,

v.

CINCINNATI INSURANCE COMPANY and the Rock County Humane Society, Inc., Defendants-Respondents.

Court of Appeals

*No. 99–1094. Submitted on briefs November 18, 1999.—Decided March 16, 2000.*

## 2000 WI App 82

(Also reported in 610 N.W.2d 98.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Todd Becker* and *Karen M. Gallagher* of *Coyne, Niess, Schultz, Becker & Bauer, S. C.* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James A. Carney* of *Nowlan & Mouat* of Janesville.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1. ROGGENSACK, J. Fire Insurance Exchange appeals an order granting summary judgment to the Rock County Humane Society (RCHS) and its insurer relating to a dog bite suffered by a twelve-year-old boy while he was volunteering at RCHS. Fire Insurance, who insures the dog's owners, Michael and Cheryl Hirschfield, claims the circuit court erred in dismissing its complaint for contribution. RCHS contends that Fire Insurance paid the child for his injuries without any legal obligation to do so and was therefore a volunteer payor, to whom no right of contribution accrues. It also asserts that a release signed by the child's mother precludes liability for it under any theory. We conclude that the Hirschfields and RCHS may be joint tortfeasors under theories of negligence and the statutory liability imposed on owners/keepers of dogs that bite and that the volunteer activities of the child may have violated the child labor laws. We also conclude we cannot determine the validity of the

release the child's mother signed in favor of RCHS. Because the record presented on this review of these three issues is insufficient to make determinations about them as a matter of law, we reverse the circuit court's grant of summary judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. On August 1, 1994, Adam Kuchelmeister, a twelve-year-old boy, was bitten by a dog while he was volunteering at RCHS. The dog was owned by the Hirschfields. The facts surrounding how the bite occurred and how the dog came to be at RCHS are not in the record before us.

¶ 3. Kuchelmeister made a claim against the Hirschfields for monetary damages as a result of the dog bite. Kuchelmeister claimed that the accident arose out of the "negligent acts or omissions" of the Hirschfields. As a result of these claims, Fire Insurance settled with Kuchelmeister for an initial payment of $19,500 and six periodic payments of $5,119.24, which is represented in the pleadings as a total settlement of $42,948. Fire Insurance received an assignment of Kuchelmeister's claims as part of the settlement.

¶ 4. Fire Insurance then filed an action in the circuit court seeking contribution from RCHS and its insurer, Cincinnati Insurance Company.[1] Fire Insurance asserted a right to contribution based on three theories: (1) negligence, (2) strict liability, pursuant to

---

[1] Throughout this opinion, we refer to the Rock County Humane Society and the Cincinnati Insurance Company jointly as RCHS. Their interests are aligned for purposes of this appeal.

318

the dog bite statute, WIS. STAT. § 174.02 (1993–94),[2] and (3) liability of RCHS, pursuant to the child labor laws, WIS. STAT. § 103.65.[3] RCHS denied the claims and, as an affirmative defense, it asserted that Kuchelmeister's mother waived any claim he might have had by the Volunteer Workers Agreement and Release (Release) she signed in exchange for the opportunity for Kuchelmeister to participate in the volunteer program.

¶ 5. Fire Insurance filed a motion for partial summary judgment on two issues: (1) that the Release signed by Kuchelmeister's mother was void, unenforceable and against public policy; and (2) that RCHS was liable for Kuchelmeister's injuries, as a matter of law, because his volunteer work violated the child labor laws found in WIS. STAT. § 103.65. In support of its motion, it relied on the complaint and an affidavit of Attorney Becker, which averred only that a copy of the Release was attached to his affidavit.

¶ 6. RCHS moved for summary judgment seeking a dismissal of all three claims of Fire Insurance, which the circuit court granted. In support of its motion, it filed an affidavit of Attorney Carney, which averred only that a copy of the complaint for contribution was attached to his affidavit. The court concluded that under WIS. STAT. § 174.02, as construed in *Armstrong v. Milwaukee Mutual Insurance Co.*, 202 Wis. 2d 258, 549 N.W.2d 723 (1996), Kuchelmeister was a

---

[2] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

[3] Although the relief requested in all three claims is labeled "contribution," Fire Insurance actually seeks indemnification for the second and third claims against RCHS because it requests the court to order that it be reimbursed for the full amount of the settlement payments to Kuchelmeister.

keeper, or statutory owner, of the dog; and therefore, he could not collect for his injuries from the Hirschfields, another statutory owner.[4] Therefore, RCHS and the Hirschfields were not obligated to Kuchelmeister for the injury he sustained. The circuit court reasoned that "[s]imply because plaintiff chose to make a payment to Kuchelmeister, as Hir[s]chfields' insured, does not open the door to an action for contribution. As a matter of law the Hir[s]chfields are not tortfeasors. They do not share a common liability with defendants." In granting RCHS's motion for summary judgment, the circuit court found "no evidence of negligence on the part of the Hir[s]chfields," and it did not address Fire Insurance's claims regarding the alleged violation of the child labor laws or the validity of the Release Kuchelmeister's mother signed. Fire Insurance appeals.

---

[4] In its brief, RCHS argues that it and the Hirschfields are not "joint negligent wrongdoers" because RCHS was the sole statutory keeper of the dog pursuant to WIS. STAT. § 174.02; and thus, it was strictly liable for Kuchelmeister's injuries, not the Hirschfields. Therefore, it contends that because Fire Insurance did not have a common liability with RCHS for Kuchelmeister's injuries, no claim for contribution will lie. This is a different focus than the circuit court used in its reasoning for granting the dismissal of Fire Insurance's claim because the circuit court specifically concluded that Kuchelmeister was a keeper of the dog. RCHS does not explicitly address whether Kuchelmeister was a keeper, but by implication from its argument that it was the sole statutory keeper, we infer that RCHS does not believe he was.

## DISCUSSION

**Standard of Review.**

¶ 7. We review summary judgment decisions *de novo*, applying the same standards employed by the circuit court. *See Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). We first examine the complaint to determine whether it states a claim, and then review the answer, to determine whether it joins a material issue of fact or law. *See id.* If we determine that the complaint and answer are sufficient, we proceed to examine the moving party's affidavits, to determine whether they establish a *prima facie* case for summary judgment. *See id.* at 232–33, 568 N.W.2d at 34. If they do, we look to the opposing party's affidavits, to determine whether there are any material facts in dispute which entitle the opposing party to a trial. *See id.* at 233, 568 N.W.2d at 34. In addition, we review questions of statutory interpretation *de novo*. *See State v. Beiersdorf*, 208 Wis. 2d 492, 504, 561 N.W.2d 749, 755 (Ct. App. 1997).

**Contribution.**

¶ 8. Contribution was the relief sought in Fire Insurance's complaint. Contribution is a common law right, based on principles of equity. *See State Farm Mut. Auto. Ins. Co. v. Continental Cas. Co.*, 264 Wis. 493, 496, 59 N.W.2d 425, 426 (1953). In order for a claim of contribution to lie, three elements must be met: (1) both parties must be joint tortfeasors, (2) both parties must have common liability to the same person because of their status as tortfeasors, and (3) one party

must have born an unequal portion of the common burden. *See Gaertner v. Holcka*, 219 Wis. 2d 436, 444, 580 N.W.2d 271, 274 (1998) (citations omitted). Most cases address contribution in the context of a negligence claim. However, the supreme court has also addressed it in cases of strict responsibility for a defective product, where liability is not predicated on the violation of any standard of care or negligent act, but rather, on the defective condition of a product. *See City of Franklin v. Badger Ford Truck Sales, Inc.*, 58 Wis. 2d 641, 207 N.W.2d 866 (1973). Generally, contribution is based on an acknowledged joint liability. However, it can also be based on a settlement of what is contended to be joint liability, with the settling party being required to prove that: (1) both parties were obligated to the payee; (2) the amount of the payment was reasonable; and (3) the proportionate fault with negligent tortfeasors, or other apportionment method when negligence is not the basis for mutual liability. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 50 at 339 (5th ed. 1984); *see also Farmers Mut. Auto. Ins. Co. v. Milwaukee Auto. Ins. Co.*, 8 Wis. 2d 512, 519, 99 N.W.2d 746, 750 (1959); *United States Fidelity & Guar. Co. v. Milwaukee & Suburban Transp. Corp.*, 18 Wis. 2d 1, 13, 117 N.W.2d 708, 715 (1962); *Bielski v. Schulze*, 16 Wis. 2d 1, 6, 114 N.W.2d 105, 107 (1962), *overruled on other grounds, Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 294 N.W.2d 437 (1980).

*1. Negligence.*

¶ 9. Joint negligence is asserted as one basis for the contribution Fire Insurance seeks. It is a claim the circuit court dismissed. Our review on appeal shows the complaint alleged RCHS was negligent in regard to the child and it had attached a copy of the Agreement,

so that an allegation that the Hirschfields were negligent was also part of the record for summary judgment. This Agreement also assigned all of Kuchelmeister's claims, which arose from the incident, to Fire Insurance. Therefore, allegations that RCHS and the Hirschfields were both negligent, causing Kuchelmeister's injuries, were made. RCHS denied the allegations of its own negligence. Therefore, the pleadings joined issues of fact and law.

¶ 10. As the movant, RCHS was obligated to establish a *prima facie* case for the relief it was requesting from the circuit court, once the pleadings joined an issue of fact or law. *See Smith,* 212 Wis. 2d at 232–33, 568 N.W.2d at 34. However, in support of its motion for summary judgment requesting dismissal of Fire Insurance's complaint, RCHS submitted nothing to support a dismissal of the claim of negligence made against it, nor did it submit anything relevant to whether the Hirschfields were negligent. Therefore, we conclude RCHS did not meet the burden necessary to prevail on summary judgment dismissing Fire Insurance's negligence claim against it.[5] Accordingly, we reinstate Fire Insurance's negligence claim.

### 2. *Strict Liability Under the Dog Bite Statute.*

¶ 11. Fire Insurance also asserted strict liability under WIS. STAT. § 174.02 as a basis for its contribution

---

[5] Although the circuit court found, "Here there is no evidence of negligence on the part of the Hirs[c]hfields," there is nothing in the record to support that statement. Furthermore, the negligence claim it dismissed was against RCHS, which Fire Insurance was able to make due to the settlement payment to Kuchelmeister and assignment of claims to Fire Insurance.

claim. The circuit court determined that Kuchelmeister was a keeper of the dog because he was a volunteer at RCHS who was exercising control and care over the dog at the time he was bitten. Therefore, the circuit court concluded that, as a keeper or statutory owner, Kuchelmeister could not hold the Hirschfields, another statutory owner, strictly liable under the statute based upon the supreme court's decision in *Armstrong*.

¶ 12. WISCONSIN STAT. § 174.02 establishes an owner's liability for injuries caused by that person's dog. Specifically, it provides, "the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property." A statutory owner is defined more broadly than simply a legal owner of the dog. It encompasses "any person who owns, harbors or keeps a dog." *See* WIS. STAT. § 174.001(5). On appeal, RCHS contends that *Armstrong* establishes that it was the *sole* statutory owner of the dog. The circuit court relied on *Armstrong* as well, but in a slightly different way because it found that Kuchelmeister was also a keeper, not that RCHS was the sole keeper.

¶ 13. In *Armstrong*, the Macks owned a Siberian husky which they left with a kennel when they went on vacation. Armstrong, an employee of the kennel, was bitten by the husky while trying to get the dog into her cage. Armstrong filed a complaint against the Macks and their insurer. In determining whether Armstrong could recover, the court first considered who was a "keeper" of a dog under the statute. *See Armstrong*, 202 Wis. 2d at 264–65, 549 N.W.2d at 726. The court determined that because Armstrong was caring for and exercising control of the dog at the time she was bitten,

she was a keeper of the dog and therefore, an owner under the statute.[6] *See id.* at 267–68, 549 N.W.2d at 727–28. The court then considered whether a keeper can hold a legal owner, *against whom no negligence is alleged,* strictly liable under WIS. STAT. § 174.02. *See Amstrong,* 202 Wis. 2d at 268, 549 N.W.2d at 728. Relying on the purpose of the statute, the court refused to allow a keeper to use the statute to hold another statutory owner strictly liable. The court reasoned that the purpose of the statute is to protect those people who are not in a position to control the dog, and not to protect those persons who are statutorily defined as owners. *See id.* The court emphasized, "[o]f course, when there is negligence, there is nothing in this opinion which should be interpreted to prevent a keeper from pursuing a common-law negligence claim against another owner." *Id.* at 268 n.8, 549 N.W.2d at 728 n.8.

¶ 14. On the record before us, we cannot conclude, as the circuit court did, that Kuchelmeister was a keeper of the dog, for two reasons. First, Fire Insurance has made a claim that RCHS violated the child labor laws in allowing Kuchelmeister to volunteer there. If RCHS did violate the child labor laws, we would conclude, as a matter of law, that Kuchelmeister was not a keeper of the dog under the statute. Second, even if RCHS did not violate the child labor laws, the record is insufficient to make that determination as a matter of law.

¶ 15. As the supreme court in *Armstrong* explained, a keeper of a dog is a person who exercises some measure of custody, care or control over the dog. *See Armstrong,* 202 Wis. 2d at 267, 549 N.W.2d at 727.

---

[6] A statutory owner is defined as: "any person who owns, harbors or keeps a dog." WIS. STAT. § 174.001(5).

However, the policy of promoting child-welfare, which underlies the child labor laws, requires that an employer who employs a child in a prohibited occupation be held strictly accountable for all consequences flowing from such employment "regardless of the fault of the injured person . . . ." *See D.L. v. Huebner,* 110 Wis. 2d 581, 639, 329 N.W.2d 890, 917 (1983) (citation omitted). If we were to conclude that Kuchelmeister was exercising care or control over the dog and thus was liable as a keeper, and also to conclude that RCHS violated the child labor laws, then we would not be requiring RCHS to be strictly accountable under the child labor laws for injury a child had sustained through the violation of those laws. Stated another way, how can we hold that Kuchelmeister should be liable under WIS. STAT. § 174.02 for exercising care and control over the dog, if under the child labor laws, he should never have been allowed to volunteer at the RCHS in the first place? Therefore, if the circuit court concludes that RCHS violated the child labor laws, as a matter of law, Kuchelmeister cannot be held to be a keeper of the dog under § 174.02.

¶ 16. If the circuit court determines that Kuchelmeister was not a keeper of the dog, *Armstrong* would not be dispositive of Fire Insurance's claim of contribution against RCHS because he would be an innocent third party, a circumstance which *Armstrong* did not address. Whether a legal owner can make a claim of contribution against a keeper (who is also a statutory owner) under the dog bite statute when an innocent third party has been injured has not been directly addressed by a Wisconsin appellate court. However, we have implied in a recent case that such an action may lie. In *Fifer v. Dix,* 2000 WI App 66, ¶ 13 n.5, 234 Wis. 2d 117, 608 N.W.2d 740, we stated: "[b]ecause

'keepers' are considered 'owners' under WIS. STAT. ch. 174, [an injured third party] could perhaps have sued [the keeper] as well as [the owner] for his injuries under § 174.02(1)." However, because the injured third party in *Fifer* had sued only the owner, and not the keeper as well, we declined to address the keeper's potential liability for the injuries either to the injured party or to the owner by way of contribution. And, in an earlier case, *Koetting v. Conroy*, 223 Wis. 550, 270 N.W. 625 (1936), where both the owner and one alleged to be a keeper were sued, an argument was made that if the owner is in control of the dog, another who is a keeper could not also be held liable. The supreme court rejected that argument stating, "It is inconsistent with the purpose of the statute. If one is the keeper of a dog, he is made responsible by the statute for injuries inflicted by it." *Id.* at 555, 270 N.W. at 627.

¶ 17. Based on the plain language of the statute and the reasoning of *Koetting* and *Fifer*, we conclude that an owner may sue a keeper for contribution when an innocent third party has been injured. WISCONSIN STAT. ch. 174 imposes liability on *anyone who owns, keeps or harbors a dog* who injures a third party. Reading the statute to allow both owners and keepers to be liable comports with the statute's policy of assigning responsibility to those in a position to protect innocent third parties from dog bites. And once two parties are liable to the person whom the dog has bitten, they are joint tortfeasors to whom a right of contribution accrues when one pays more than that party's fair share of the damages caused. *See Gaertner*, 219 Wis. 2d at 444, 580 N.W.2d at 275.

¶ 18. In this case, both RCHS and the Hirschfields fit within the definition of a statutory

owner. As such, both may be strictly liable under the statute so long as Kuchelmeister is not also found to be a keeper. Both may avoid *strict liability*, but not liability based on negligence,[7] if the circuit court determines that Kuchelmeister is a keeper because *Armstrong* holds that a keeper may not sue another owner/keeper under WIS. STAT. § 174.02.

¶ 19.　Finally, we note that the circuit court, in its written decision, stated that Kuchelmeister was a keeper of the dog. The court in *Armstrong* determined that several factors were critical in determining who is a keeper. *See Armstrong*, 202 Wis. 2d at 267, 549 N.W.2d at 727. The person in question "must exercise some measure of custody, care or control over the dog." *Id.* For example, persons who have fed, cared for, and given a dog shelter have been found to be keepers. *See id.* (citations omitted). The court concluded that Armstrong, herself, was a keeper because she was employed to perform certain duties such as letting the dog out to exercise, cleaning its pen, and supplying it with food and water. *See id.* However, the record before us contains no such similar undisputed facts on which a court could conclude that Kuchelmeister was a keeper. For example, we do not know Kuchelmeister's duties in regard to the dog that bit him, or even if he had any duties with regard to that dog. We do not know the circumstances under which any duties with regard

---

[7] We emphasize that even if the circuit court determines that Kuchelmeister is a keeper, it was still error for the circuit court to dismiss this case. *Armstrong* demonstrates that although a keeper will be barred from bringing a claim of strict liability against another owner under the statute, that keeper will not be barred from bringing a claim of *negligence* against another owner or keeper.

to the dog were to be performed. On remand, the parties will have the opportunity to develop the relevant facts at trial.

### 3. *Child Labor Laws.*

¶ 20. Fire Insurance also moved for summary judgment claiming that RCHS was absolutely liable for Kuchelmeister's injuries because RCHS had violated the child labor laws by allowing him to volunteer. RCHS denies that claim and contends that this determination is fact-based and the record on appeal does not contain any of the necessary facts required for such a determination. We agree that on this record, we cannot conclude, as a matter of law, that RCHS did, or did not, violate WIS. STAT. § 103.65(1).

¶ 21. WISCONSIN STAT. § 103.65(1) provides:

> A minor shall not be employed or permitted to work at any employment or in any place of employment dangerous or prejudicial to the life, health, safety, or welfare of the minor or where the employment of the minor may be dangerous or prejudicial to the life, health, safety or welfare of other employes or frequenters.

Furthermore, WIS. ADMIN. CODE § IND 70.08 (1994)[8] explains that this prohibition applies to volunteer services, as well as to services provided for pay. Section IND 70.08(1)(b) states in relevant part:

> Minors may engage in part-time occasional services on a volunteer basis for nonprofit organizations of a charitable, educational and religious nature or a community service under the following conditions:

---

[8] WISCONSIN ADMIN. CODE § IND 70.08 is currently found in WIS. ADMIN. CODE § DWD 270.08.

> 1. Volunteers may not serve at any job or in
> any area that is prohibited by the child labor law or
> orders of the department.

Section IND 70.08(1)(b). Therefore, we conclude that
§ 103.65(1) may be applied to the volunteer services
which Kuchelmeister provided to RCHS.

¶ 22. In order to decide whether Kuchelmeister's
volunteer services or the place in which he was
employed were prohibited by the child labor laws, a
court must determine whether Kuchelmeister's volun-
teer work at RCHS was "dangerous or prejudicial to the
life, health, safety, or welfare of the minor." *See* WIS.
STAT. § 103.65(1). The Department of Industry Labor
and Human Relations[9] has established regulations
deeming certain places and types of employment as
hazardous *per se*. *See* WIS. ADMIN. CODE § IND
70.06(1)–(36) (1994). While working in a kennel or with
animals is not one of those types of employment that is
listed as hazardous *per se*, there is a listed prohibition
against "[o]ccupations which are found to be hazardous
for the employment of minors or detrimental to their
health or well-being." *See* § IND 70.06(33).

¶ 23. From the record, we are unable to ascertain
what types of services Kuchelmeister performed, the
setting in which those services took place, the type of
supervision he received, what, if any, training he
received or the types of animals with which he worked.
Therefore, we conclude that there is an insufficient
record to enable a court to decide, as a matter of law,
that Kuchelmeister's volunteering at RCHS was a vio-
lation of WIS. STAT. § 103.65(1). Accordingly, we

---

[9] The child labor regulations are now enforced by the
Department of Workforce and Development.

remand this issue to the circuit court for further proceedings.

**The Release.**

¶ 24.　The circuit court did not adjudicate the validity of the Release because it determined that Kuchelmeister had no legal claim against the Hirschfields, whom Fire Insurance insured. On appeal, Fire Insurance argues that the Release is an exculpatory contract; and therefore, it is void and unenforceable because parents can never waive the claims of their children. RCHS disagrees, and argues that the supreme court concluded, in *Yauger v. Skiing Enterprises, Inc.*, 206 Wis. 2d 76, 557 N.W.2d 60 (1996), that there are occasions when a parent may waive his child's claim. We agree that there may be occasions where a parent can waive the claim of a child, but we disagree with RCHS that *Yauger* decides this case, on the present state of the record.

¶ 25.　In *Yauger*, the supreme court considered the enforceability of an exculpatory contract signed by the father of a girl who died as the result of a skiing accident. The ski resort argued that the release of the father barred his wrongful death suit. However, the supreme court concluded that the release was void as against public policy because it failed to clearly and unambiguously explain to the father that he was accepting the risk of the ski resort's negligence and because the form failed to "clearly and unequivocally communicate to the signer the nature and significance" of the document. *See id.* at 86–87, 557 N.W.2d at 64.

¶ 26.　Two bodies of case law provide some guidance for interpretation of the Release at issue here: the law of exculpatory contracts and the child labor laws. First, while exculpatory contracts may be valid,

they are closely scrutinized and construed strictly against the party relying on them. *See id.* at 81, 557 N.W.2d at 62. Factors courts consider in determining whether an exculpatory contract is enforceable include: whether the contract discloses exactly what rights signers are waiving; whether the contract is clear, unambiguous and not overly broad; and whether there was an opportunity for negotiation or free and voluntary bargaining. *See, e.g., id.* at 81–82, 557 N.W.2d at 62 (citations omitted); *Eder v. Lake Geneva Raceway, Inc.*, 187 Wis. 2d 596, 605–06, 523 N.W.2d 429, 432 (Ct. App. 1994); *Richards v. Richards*, 181 Wis. 2d 1007, 1011, 513 N.W.2d 118, 119 (1994).

¶ 27. Second, in previous cases involving violations of the child labor laws, we have taken a broad view of the definition of places and types of employment covered by those laws. *See D.L.*, 110 Wis. 2d at 636, 329 N.W.2d at 915. For example, even when a child's injuries have occurred while performing a non-hazardous task, courts have construed the statute broadly to hold an employer liable if the child was employed in a prohibited occupation. *See id.* (citing *Leora v. Minneapolis, Saint Paul & Sault Saint Marie Ry. Co.*, 156 Wis. 386, 146 N.W. 520 (1914)). Courts have done so because "the violation of these statutes is of such gravity that public policy requires, in the interest of protecting life and limb, that persons violating them be held to strict accountability for the consequences flowing therefrom, regardless of the fault of the injured person . . . ." *Id.* at 639, 329 N.W.2d at 917 (quoting *Ludke v. Burck*, 160 Wis. 440, 443, 152 N.W. 190, 191 (1915)).

¶ 28. Given the remedial purpose of the child labor laws and the disfavor with which courts view exculpatory contracts, we conclude that if the circuit

court determines that RCHS violated the child labor laws, the exculpatory contract signed by Kuchelmeister's mother is unenforceable. Based on the statement of public policy set forth in the child labor laws, we conclude that parents may not waive the protection which those statutes afford their children. However, if the circuit court concludes that RCHS did not violate the child labor laws, when it considers whether the Release waived Kuchelmeister's claims against RCHS, it should focus on the factors identified by the supreme court in *Yauger* and other cases involving exculpatory contracts. Those cases consider not only the terms of the agreement, but also the circumstances under which it was signed and the circumstances which caused the injuries.

¶ 29. We express no opinion as to the validity[10] of the Release because the record is incomplete, both regarding the circumstances under which the Release was signed and the circumstances surrounding Kuchelmeister's injuries. Therefore, we remand this issue to the circuit court for further proceedings.

## CONCLUSION

¶ 30. We conclude that the Hirschfields and RCHS may be joint tortfeasors under theories of negligence and the statutory liability imposed on owners/keepers of dogs that bite and that the volunteer activities of the child may have violated the child labor

---

[10] We do not adopt Fire Exchange's position that, as a matter of law, a parent may never waive a child's claim. We think a better approach is to consider each contract on a case-by-case basis, applying the factors developed in case law regarding exculpatory contracts and, where appropriate, the child labor laws.

laws. We also conclude we cannot determine the validity of the Release the child's mother signed in favor of RCHS. Because the record presented on this review of these three issues is insufficient to make determinations about them as a matter of law, we reverse the circuit court's grant of summary judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.