Colleen Pawlowski and Thomas Pawlowski,
Plaintiffs-Appellants,†

v.

American Family Mutual Ins. Co. and Nancy L.
Seefeldt, Defendants-Respondents.

Court of Appeals

*No. 2007AP2651. Oral argument September 25, 2008.
—Decided December 3, 2008.*

2009 WI App 7

(Also reported in 762 N.W.2d 802.)

† Petition to review granted 3/17/09.

799

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael S. Siddall* and *Andrew J. Rossmeissl* of *Herrling Clark Law Firm Ltd.*, Appleton. There was oral argument by *Michael S. Siddall*.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Sandra L. Hupfer* and *Kathryn M. Ver Boort* of *Stellpflug, Janssen, Hammer, Kirschling & Bartels, S.C.*, De Pere. There was oral argument by *Sandra L. Hupfer*.

Before Brown, C.J., Snyder and Neubauer, JJ.

¶ 1. NEUBAUER, J. Colleen and Thomas Pawlowski appeal from a summary judgment granted in

favor of American Family Mutual Insurance Company and Nancy L. Seefeldt. The Pawlowskis contend that the trial court erred in its determination that Seefeldt was not strictly liable under the dog bite statute, Wis. Stat. § 174.02 (2005–06),[1] for injuries sustained by Colleen when a dog kept at Seefeldt's residence was let out the front door by its legal owner, Walter Waterman. The dog bite statute holds persons who "own, harbor or keep" a dog strictly liable for any damages the dog causes. A statutory keeper may be simultaneously liable with an owner. The trial court concluded that at the moment of injury, the dog's legal owner had control of the dog and, therefore, Seefeldt was not a statutory keeper under § 174.02. We reverse the trial court's ruling.

¶ 2. To be a keeper under Wis. Stat. § 174.02, one must exercise some measure of custody, care or control over the dog. Generally, one who provides shelter and protection for a dog in his or her own home, i.e., has custody, is a keeper. While a person's keeper status can change over time, with the focal point being the time of injury, Wisconsin case law instructs that a statutory keeper retains keeper status, despite an owner's temporary control, unless the keeper has relinquished custody, care *and* control of the dog to the owner at the time of the injury. Here, at the time of the injury, the dog was still kept at Seefeldt's home and the injury occurred when the dog charged out the door of her home. Thus, we conclude that she remained a keeper at the time of the injury, regardless of the fact that the legal owner let the dog out the door. We therefore conclude that she is liable for Colleen's injury and that

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

the Pawlowskis are entitled to judgment as a matter of law. We reverse the judgment and remand with directions to enter judgment in favor of the Pawlowskis.

## BACKGROUND

¶ 3.  Waterman and his two dogs moved into Seefeldt's residence in June 2003. Waterman had recently lost his job and needed a place to live that allowed dogs. He was unable to live with his girlfriend, as her apartment would not allow dogs. A mutual friend of Waterman and Seefeldt believed that Seefeldt's property, having a large fenced backyard, would be suitable for dogs. The friend approached Seefeldt about Waterman living there with the dogs until he found a job. Seefeldt also kept three dogs of her own at her house.

¶ 4.  Waterman and the dogs lived at the house without event until October 26, 2003. On October 26, 2003, Seefeldt was home when Waterman opened the front door to go to the grocery store; Seefeldt stated in her deposition that Waterman "always put [the dogs] in his car and took them with him." The dogs immediately charged across the street, while Waterman chased them, and one of the dogs bit Colleen three times.

¶ 5.  As a result of the incident, Colleen sustained sixteen puncture wounds and soft tissue damage. Waterman subsequently moved out of the house with his two dogs and could not be located for litigation. Colleen and her husband filed this action against Seefeldt and her insurer, American Family, on October 25, 2006.

¶ 6.  Seefeldt and American Family sought summary judgment on grounds that the Pawlowskis failed to state a claim upon which relief could be granted because Seefeldt was not the "keeper" of the dogs at the time of the incident, and thus was not a statutory owner

subject to liability under WIS. STAT. § 174.02.[2] The Pawlowskis opposed, arguing that summary judgment on the issue of whether Seefeldt was a statutory keeper should be denied as there are "several genuine issues of material fact that should be resolved by a jury."[3]

¶ 7. After hearing oral argument from both parties, the trial court granted summary judgment for Seefeldt and American Family on grounds that Seefeldt was not a keeper of the dogs at the time of the attack, and to the extent Seefeldt was a keeper of the dogs, that status ended when Waterman "exercise[d] dominion" over the dogs by leaving the residence with them. The court noted that Seefeldt clearly would be the statutory keeper of the dogs if, for example, she had been the one leaving the house with them or if a different incident had occurred while Waterman was not there.

¶ 8. The Pawlowskis appeal.

## DISCUSSION

■

¶ 9. Under WIS. STAT. § 174.02, an "owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property." An "owner" is defined as "any

---

[2] The only cause of action under consideration is strict liability under WIS. STAT. § 174.02. The Pawlowskis have expressly disclaimed any pursuit of a common-law negligence claim.

[3] While the Pawlowskis opposed summary judgment on the "keeper" issue, they did move for summary judgment on the issue of double damages. Because the trial court granted Seefeldt's motion for summary judgment on the keeper issue, it did not reach the issue of double damages. The Pawlowskis do not raise the issue of double damages on appeal.

person who owns, harbors or keeps a dog." WIS. STAT. § 174.001(5). The strict liability statute's purpose "is to protect those people who are not in a position to control the dog." *Armstrong v. Milwaukee Mut. Ins. Co.*, 202 Wis. 2d 258, 268, 549 N.W.2d 723 (1996). At issue on appeal is (1) whether the fact that Seefeldt sheltered the dog at her residence rendered her a statutory "keeper" and therefore a statutory "owner" at the time of Colleen's injury and (2) if so, whether Seefeldt relinquished that status when the legal owner let his dog out the door of her home. The Pawlowskis argue that Seefeldt was a statutory owner and that her keeper status was not relinquished. The Pawlowskis contend that the trial court erred when it granted summary judgment in favor of Seefeldt.

¶ 10.   The grant or denial of a motion for summary judgment is a matter of law that this court reviews de novo. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 536, 563 N.W.2d 472 (1997). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Whether Seefeldt was an "owner" of the dog at the time of the injury within the meaning of WIS. STAT. § 174.02 also presents a question of law which we review de novo. *See Braverman v. Columbia Hosp., Inc.*, 2001 WI App 106, ¶ 12, 244 Wis. 2d 98, 629 N.W.2d 66 (application of statute to undisputed facts presents question of law).

¶ 11.   In Wisconsin, both a legal owner and statutory keeper can be simultaneously strictly liable under

WIS. STAT. § 174.02. *See Fire Ins. Exch. v. Cincinnati Ins. Co.*, 2000 WI App 82, ¶ 18, 234 Wis. 2d 314, 610 N.W.2d 98. "Reading the statute to allow both owners and keepers to be liable comports with the statute's policy of assigning responsibility to those in a position to protect innocent third parties from dog bites." *Id.*, ¶ 17. To be a keeper and therefore an owner, the person "must exercise some measure of custody, care or control over the dog." *Armstrong*, 202 Wis. 2d at 267 (*citing Hagenau v. Millard*, 182 Wis. 544, 547–48, 195 N.W. 718 (1923)) (exercise control over, or furnish with shelter, protection or food); *Janssen v. Voss*, 189 Wis. 222, 224, 207 N.W. 279 (1926) (has custody, dominion or authority over); *Koetting v. Conroy*, 223 Wis. 550, 552, 270 N.W. 625 (1936) (keep at dwelling and feed); and *Pattermann v. Pattermann*, 173 Wis. 2d 143, 150, 496 N.W.2d 613 (Ct. App. 1992) (feed, care for, give shelter).[4]

██

¶ 12.    Thus, one who shelters or maintains the dog on his or her premises, i.e., has custody of the dog at his or her home, is a "keeper." *Armstrong*, 202 Wis. 2d at 266 (persons who have fed, cared for, and given a dog shelter have been found to be keepers). However, "[t]he casual presence of dogs will not suffice to transform a person into a keeper; there must be evidence that the person has 'furnished them with shelter, protection, or food, or that they exercised control over the dogs.' " *Id.* (citing *Hagenau*, 182 Wis. at 547–48); *see also Koetting*, 223 Wis. at 552.

---

[4] WISCONSIN JI—CIVIL 1391 provides:

> A person is said to be a keeper of an animal if, even though not owning the animal, the person has possession and control of it or if the person permits another person who is a member of his or her family or household to maintain the animal on his or her premises.

## Seefeldt as "Keeper"

■

¶ 13. At the outset, we address the issue of whether Seefeldt was a keeper within the meaning of WIS. STAT. § 174.02. The parties dispute whether Seefeldt's involvement with Waterman and his dogs was sufficient to qualify her as a keeper. Based on our review of the record, we conclude that Seefeldt was a keeper under § 174.02.

¶ 14. While the facts of record are sparse, it is undisputed that Waterman and his dogs had resided at Seefeldt's personal residence for approximately four months prior to the incident. By permitting Waterman's dogs to reside at her home over a period of months, Seefeldt provided them with both shelter and protection on an ongoing basis and was therefore a keeper. *See, e.g., Armstrong,* 202 Wis. 2d at 265 (one who has furnished a dog with shelter and protection is a keeper).

¶ 15. In so holding, we reject Seefeldt's attempt to liken herself to a "pro bono" landlord in an effort to escape keeper status. The cases cited by Seefeldt involve traditional landlord/tenant arrangements, not a situation where the owner of a home permits another person in her house to maintain a dog on the same premises. *See Hagenau,* 182 Wis. at 548–49 (commercial landlord not a keeper of tenant's dogs); *Malone v. Fons,* 217 Wis. 2d 746, 764–65, 580 N.W.2d 697 (Ct. App. 1998) (an off-premise landlord is not a "harborer" for purposes of WIS. STAT. § 174.001); *Gonzales v. Wilkinson,* 68 Wis. 2d 154, 158, 227 N.W.2d 907 (1975) (off-premise landlord and no allegation that the landlord was either an owner or keeper).[5]

---

[5] The court's decision in *Smaxwell v. Bayard,* 2004 WI 101, ¶ 23, 274 Wis. 2d 278, 682 N.W.2d 923, clarified, "under *Gonzales* [v. *Wilkinson,* 68 Wis. 2d 154, 227 N.W.2d 907 (1975),] a

¶ 16. Although Waterman did not pay rent, he contributed to some household duties. Even if we assume Seefeldt's arrangement with Waterman was akin to a landlord/tenant relationship, she was clearly an on-premise landlord. More to the point, she personally provided shelter and protection to the dog in her own home. *Compare Malone*, 217 Wis. 2d at 764, 766 (landlord is not strictly liable where "there is no evidence that [the landlord], aside from tacitly permitting [the tenant] to keep a dog in the house, afforded lodging, or gave shelter or refuge to the dog"). Here, there is no factual dispute as to whether Seefeldt provided the dog with shelter and protection in her home over a period of months. She did. As a result, Seefeldt is a keeper or statutory owner under WIS. STAT. § 174.02.

*Keeper at the Time of the Injury*

¶ 17. Seefeldt contends that she was not a keeper at the moment of the injury because Waterman went out the front door with the dog, and was thus exercising dominion and control over the dog.[6] The parties each point to *Armstrong, Janssen* and *Koetting* in support of their respective positions. Our review of these Wisconsin cases leads us to conclude that Seefeldt had not relinquished keeper status, as she still maintained the

---

landlord who is not the owner or keeper of his [or her] tenant's dog and who exercises no dominion or control over the dog cannot be held liable under common-law negligence for acts of his [or her] tenant's dog."

[6] We note that there is some disagreement as to whether Waterman was actually "in control" of the dog when they left the home. Based on our holding that Seefeldt is a keeper regardless of whether the legal owner had control of the dog, we need not resolve this dispute.

dog at her premises, and in fact, the dog charged out at Colleen from Seefeldt's front door.

¶ 18. Turning first to *Janssen*, the issue presented was whether the mother of a fourteen-year-old dog owner "was a keeper of the dog at the time of the injury." *Janssen*, 189 Wis. at 222, 223. The dog owner's mother left town to attend a funeral and arranged for the dog to be placed at a dog hospital in her absence. *Id.* at 222–23. The son, who was the registered and licensed owner of the dog, was staying with another family in his mother's absence. *Id.* Despite the mother's explicit instructions to leave the dog at the hospital, her son took the dog from the hospital and tied it in the yard of the home where he was staying. *Id.* at 223. The dog bit a child who wandered into the yard. *Id.* The dog owner's mother was sued by the injured child. *Id.*

¶ 19. It was conceded that the mother in *Janssen* was the keeper of the dog up until she departed for the funeral—she bought the dog for her son, brought it to her home, and it had been maintained there at her expense and under her control for over a year prior to the incident. *Id.* at 223–24. However, when she placed the dog in the hospital with instructions that it was to stay there and the dog's owner removed the dog from the hospital and took it elsewhere, her authority and responsibility for the dog were at an end. In reaching its determination, the court observed:

> Where the keeper is not the owner, it may be assumed, as a general proposition, that the dominion or authority of the keeper over the dog is a limited one, subject to be terminated at any time by the owner. In the absence of special circumstances, the owner may terminate the dominion of the keeper over the dog at any time and remove the dog from the custody of the keeper. The moment that is done, the dual authority theretofore

809

exercised over the dog by the owner and the keeper is merged in the owner, and at that very moment the keeper's rights and responsibilities concerning the dog are at an end.

*Id.* at 224. The court concluded that *by placing the dog in the dog hospital* during her absence, the mother was "discharge[d] of duties resting upon her as keeper of the dog . . . ." *Id.* at 225.

¶ 20. The facts of *Koetting*, like *Janssen*, involve a parent homeowner who was not present at the time of injury. *Koetting*, 223 Wis. at 551–52. In *Koetting*, the adult daughter of the respondent owned the dog and lived in the respondent's home. *Id.* at 552. The adult daughter received board, lodging and support from her father. *Id.* The daughter's dog was allowed in the house and fed table scraps. *Id.* When the adult daughter took the dog to a park and let the dog off of its leash, the dog ran into the plaintiff from behind causing her to fall down, inflicting serious and permanent injury to her hips. *Id.* at 551. The father did not know that his daughter had the dog at the park and was not present at the time of the incident; however, he knew that "she was in the habit of taking it out" as she had at the time of injury. *Id.* at 551–52.

¶ 21. The father in *Koetting* argued that his keeper status ended when the owner took control of the dog by taking it out of the home for a walk. *See id.* at 554. The court expressly rejected the argument "that the keeper is not liable for injuries done by a dog if the dog is under the control of another at the immediate time." *Id.* at 555. The court noted that while the cases of *Janssen* and *Hagenau* "are claimed to sustain this view . . . the [dog bite] statute does not permit of such a limitation. It is inconsistent with the purpose of the statute. If one is the keeper of a dog, he is made

responsible by the statute for injuries inflicted by it."
*Koetting*, 223 Wis. at 555. Significantly, the court ob-
served that in *Janssen*, the mother "particularly ex-
empted herself from being its keeper by causing the dog
to be kept for the period of her absence in a dog
hospital." *Koetting*, 223 Wis. at 555. By contrast, in
*Hagenau*, the defendant landlord was not a keeper
because the dogs were kept by the owner in an apart-
ment rented by the dog owner from the landlord, and
there was no evidence that the landlord or his wife
"furnished [the dogs] with shelter, protection, or food,
or that they exercised control over the dogs." *Hagenau*,
182 Wis. at 548. Significantly, the *Koetting* court re-
viewed these cases and concluded that "[*t*]*o be within
the rule of [Hagenau], the defendant [Koetting] should
have refused to permit the dog to be kept on his premises,
should have compelled the daughter to keep it or have it
kept elsewhere.*" *Koetting*, 223 Wis. at 555 (emphasis
added).

¶ 22. Thus, the *Koetting* court held that the fa-
ther had not relinquished keeper status despite the fact
that the owner took the dog out of the home, because
the father kept the dog on his premises. *Id.* at 554–55.
The court noted that the father "doubtless exercised no
control over the dog except that he controlled whether
the dog should be kept in his home or not, and whether
it should be fed from the family larder or not, but *that
sort of control is the thing that, in view of the statute and
the [caselaw] . . . makes him the dog's keeper.*" *Id.* at 554.
(emphasis added).

¶ 23. The holding in *Koetting* appears to govern
the outcome in this case. However, Seefeldt contends,
and the trial court agreed, that *Amstrong* modified
*Koetting* and set forth the proposition that at the
moment the owner takes control of the dog, the keeper

811

status ends. We disagree. Our review of *Armstrong*, together with *Janssen* and *Koetting*, supports the conclusion that the keeper status ends when the keeper relinquishes not only control, but also shelter or custody—such that the custody, care *and* control of the dog are *all* exercised by the owner. It is then that the keeper's "authority" over the dog is at an end.

¶ 24. In *Armstrong*, the dog owners left their dog at a kennel while on vacation. The dog bit a part-time employee at the kennel when she attempted to return the dog to its kennel. *Armstrong*, 202 Wis. 2d at 261–62. One issue was whether the employee was a keeper. *Id.* at 264. Significantly, the court found that the kennel employee became a keeper because the owners "affirmatively relinquished physical custody and entrusted their dog to the employees at [the kennel] for the purpose of providing her with care." *Id.* at 267–68. Therefore, custody, care *and* control were all exercised by the employee. *Id.*

¶ 25. Seefeldt contends that in reaching its decision, the *Armstrong* court modified the holding in *Koetting*, or in the alternative, Seefeldt encourages this court to give less weight to *Koetting* as it "was decided over seventy years ago." While *Koetting* and many of the dog bite cases are dated, *Armstrong* was decided by the supreme court in 1996 and cited favorably to *Koetting* when setting forth its summary of the law. *See Armstrong*, 202 Wis. 2d at 266.

¶ 26. When looking to the "moment in time," *Janssen*, *Koetting* and *Armstrong* all find keeper status if the person exercised "custody, care or control" over the dog at the time of the injury. The disjunctive "or" recognizes that a dog may be under "dual authority" at the time of the injury. *See Janssen*, 189 Wis. at 224. If an individual retains the custody and care

aspect of keeper status, he or she remains liable at the time of injury. Thus, because the mother in *Janssen* relinquished custody, care and control by taking the dog to the hospital, she relinquished keeper status. *Id.* at 225. In *Armstrong*, because the custody, care and control of the dog were transferred to the dog kennel employee by the owner, the employee acquired keeper status. *Armstrong*, 202 Wis. 2d at 267–68. The *Koetting* father's authority was not at an end when his adult daughter, the dog's owner, took the dog out of the home for a walk to the park. *Koetting*, 223 Wis. at 554.

¶ 27. The purpose of WIS. STAT. § 174.02 "is to protect those people who are not in a position to control the dog." *Armstrong*, 202 Wis. 2d at 268. This purpose is the common thread in each of the above cases, the landlord/tenant cases such as *Hagenau*, and those finding a dog's "casual presence" at a home does not give rise to keeper status: the statute holds strictly liable those who *are in a position* to protect innocent third parties by exercising the authority arising from their custody, care or control relationship with the dog and its owner. Here, at the time of injury, Seefeldt retained statutory ownership of the dog; she had not relinquished custody. She continued to maintain the dog at her home, and the incident happened when the dog charged out the front door of her home. Waterman and his dogs were still on her property when he let the dogs out the front door to go to his car. Whether she exercised control at that moment, the strict liability statute holds her liable as she was in a position to protect innocent persons walking by from dogs kept at her home. Unlike the facts of *Janssen*, Seefeldt had not expressly terminated her dual authority with the dog's owner, nor is there any evidence that

813

Waterman had done so.[7] As a result, we conclude that Seefeldt was a keeper at the time of Colleen's injury and is strictly liable under § 174.02.

## CONCLUSION

¶ 28. We conclude as a matter of law that Seefeldt was a keeper of the dog and remained a keeper, despite the fact that the legal owner let the dog out the front door at the time of Colleen's injury. Because Seefeldt was a keeper at the time of injury, she is strictly liable as a statutory owner under WIS. STAT. § 174.02. We therefore reverse the trial court's grant of summary judgment in favor of Seefeldt and American Family. We remand with directions to enter judgment in favor of the Pawlowskis.[8]

---

[7] The dissent contends that the majority ignores *Janssen v. Voss*, 189 Wis. 222, 207 N.W. 279 (1926), and fails to address whether Seefeldt's keeper status was terminated by Waterman's "assumption of dominion and control over the dog at the time of the injury to Colleen." Dissent, ¶¶ 40–42. To the contrary, we both consider *Janssen* and its analysis of a keeper's limited status, as well as whether either Seefeldt or Waterman terminated that limited status. Namely, as we discuss above, the mother in *Janssen* ended her limited keeper status (her custody as well as her authority and responsibilities) when she placed the dog *outside the home* in the kennel. The supreme court subsequently instructed that to be within that *Janssen* result, i.e., relinquishment of the limited keeper status to the owner, the father in *Koetting* would have had to compel the daughter to keep the dog elsewhere. *Koetting v. Conroy*, 223 Wis. 550, 555, 270 N.W. 625 (1936). Here, Seefeldt had not relinquished her limited keeper status (nor had Waterman terminated it), because the dog was still kept at her home and was on her property when it charged out the front door at Colleen. Waterman did not have exclusive custody, care and control of the dog.

[8] The court is specifically authorized by statute to award summary judgment to the nonmoving party if it determines

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 29. BROWN, C.J. (*concurring*). I join in the thoughtful and well considered majority opinion. It pulls together the arguably incongruous holdings in *Janssen v. Voss*, 189 Wis. 222, 207 N.W. 279 (1926); *Koetting v. Conroy*, 223 Wis. 550, 270 N.W. 625 (1936); and *Armstrong v. Milwaukee Mutual Insurance Co.*, 202 Wis. 2d 258, 549 N.W.2d 723 (1996), and shows how the cases are, at the end of the day, logically consistent after all. Far from "ignoring" the holding in *Janssen*, as the dissent contends, the majority opinion collates these opinions, and by so organizing and discussing, properly informs us.

¶ 30. I write just to touch, for a moment, on the public policy behind the dog bite statute. As I see it, the purpose of the statute is to protect from harm the surrounding neighbors, passers-by and those who come in proximity to a dog. If a neighbor agrees to keep and shelter a dog in the home, it means the dog is living in that home just as much as would be the case if the homeowner was the legal owner of the dog. Unless and until the homeowner's status as keeper is intentionally terminated in time and space by the dog's removal from the home, that homeowner is strictly liable for any dog-bite injury to his or her neighbors, passers-by and others in proximity. I do not believe the legislature meant to allow the keeper of the dog to avoid strict liability to his or her neighbors, passers-by or others in

that party is entitled to judgment as a matter of law. *See* Wis. Stat. § 802.08(6). In other words, if the facts presented to the trial court are undisputed, the court may decide either party is entitled to a judgment as a matter of law, regardless of which moved for summary judgment.

proximity by pointing a finger at someone else and arguing that at that certain moment in time, even though the dog was still within the perimeter of the homeowner's property, he or she had temporarily stopped being the keeper. To allow such a result would be to drown the statute in a sea of minutiae.

¶ 31. SNYDER, J. (*dissenting*). In reversing the trial court's summary judgment dismissal of this strict liability dog bite case, my colleagues relate that "[o]ur review of these Wisconsin cases leads us to conclude that Seefeldt had not relinquished keeper status, as she still maintained the dog at her premises, and in fact, the dog charged out at Colleen from Seefeldt's front door." Majority, ¶ 17. Whether a person is a keeper of a dog depends upon the peculiar facts and circumstances of each individual case. *Hagenau v. Millard*, 182 Wis. 544, 547, 195 N.W. 718 (1923). Because the undisputed facts and circumstances here, as applied under WIS. STAT. § 174.02(1), and the cases cited by the majority lead me, as they did the trial court, to conclude that Seefeldt had relinquished dominion, care, control, custody, responsibility for, and authority over Waterman's dog to Waterman at the time of the injury to Colleen, I respectfully dissent.

¶ 32. The majority concludes that the facts and circumstances are "sparse" but, for the purpose of summary judgment disposition, are "undisputed." Majority, ¶ 14. The majority then, citing to the holdings in *Armstrong v. Milwaukee Mutual Insurance Co.*, 202 Wis. 2d 258, 549 N.W.2d 723 (1996); *Janssen v. Voss*, 189 Wis. 222, 207 N.W. 279 (1926); and *Koetting v. Conroy*, 223 Wis. 550, 270 N.W. 625 (1936), opines that the case law supports its conclusion that Seefeldt's keeper status could only end when Seefeldt "relin-

816

quishes not only control, but also shelter or custody—such that the custody, care *and* control of the dog are *all* exercised by the owner. It is then that the keeper's 'authority' over the dog is at an end." Majority, ¶ 23. In arriving at this opinion, the majority must concede that a keeper can relinquish authority over a dog to a legal owner. Consistent with that concession, the undisputed facts, the circumstances, and the applicable law here support a conclusion as a matter of law that Seefeldt's limited keeper authority over the dog had been relinquished to Waterman at the time of Colleen's injury.

¶ 33. A keeper relinquishing total authority and control over a dog to its legal owner is discussed in *Janssen. Janssen* held:

> Where the keeper is not the owner, it may be assumed, as a general proposition, that the dominion or authority of the keeper over the dog is a limited one, subject to be terminated at any time by the owner. In the absence of special circumstances, the owner may terminate the dominion of the keeper over the dog at any time and remove the dog from the custody of the keeper. The moment that is done, the dual authority theretofore exercised over the dog by the owner and the keeper is merged in the owner, and at that very moment the keeper's rights and responsibilities concerning the dog are at an end.

*Janssen*, 189 Wis. at 224.

¶ 34. The *Janssen* holding is on point when applied to the facts and circumstances in this case. Seefeldt is not the owner of the dog. Seefeldt is a keeper of Waterman's dog, limited in dominion and control by Waterman's ownership. In seeking to distinguish this case from *Janssen*, the majority suggests that *Janssen* is limited by its facts and circumstances; specifically then, it would only apply to an owner who places a dog

817

in a hospital with restrictions and when the issue involved a parent homeowner not present at the time of the injury. *Janssen* has a much broader application. Here, the dog, at the time of causing injury, was with its legal owner, Waterman. Seefeldt was not involved in any way with the dog's whereabouts, actions, or freedom of movement. Rather, Waterman was present and had custody and dominion over his dog at the time Colleen was injured. According to the facts, Waterman acknowledged and acted upon his duty to control his dog by chasing after it as it ran for Colleen. Under *Janssen*, Waterman terminated Seefeldt's limited keeper dominion when he left the house with his dog. The moment that was done, the "dual authority" shared by Seefeldt and Waterman was "merged in the owner," and Seefeldt's "rights and responsibilities concerning the dog [were] at an end." *See id.* The *Janssen* analysis, it appears, has greater application to the appellate issue presented here than it did under the *Janssen* facts and circumstances, and, notably, in *Janssen* the dog bite victim was denied recovery under WIS. STAT. § 174.02(1).

¶ 35.  While concluding that Seefeldt was a keeper of Waterman's dog, the majority fails to address and apply the *Janssen* distinction between a keeper whose "authority . . . over the dog is a limited one," and an owner who "[i]n the absence of special circumstances . . . may terminate the dominion of the keeper over the dog at any time and remove the dog from the custody of the keeper." *See Janssen*, 189 Wis. at 224. The majority does not point to any "special circumstances" that would negate the termination of Seefeldt's dual authority over the dog, negate the merger of all authority and control of the dog in its owner, Waterman, or negate a conclusion that "at that very moment" of the injury to Colleen that

Seefeldt's rights and responsibilities concerning the dog had ended.

¶ 36. The majority also discusses the *Koetting* holding. In *Koetting*, the court imposed strict liability upon the father of the owner of a dog, the owner being an adult daughter who lived with and was supported by her father, where the adult daughter took her dog to a public park, let the dog run free off its leash, and the dog injured another park user. *Koetting*, 223 Wis. at 552. The *Koetting* decision states that the plaintiff had to show facts "which brought the circumstances of the injury within the [strict liability] statute." *Id*. Then, somewhat mysteriously, the court abandoned that standard and, citing to prior case law, decided the question of the father's strict liability based upon the familial relationship between father and (adult) daughter:

> It must be held that the [father of the adult daughter] was the keeper of the dog if we adhere to what was said in *Hagenau v. Millard*, 182 Wis. 544, 547, 195 N.W. 718:

> "Where a child is the owner of a dog kept on the premises of the father, who supplies it with food and furnishes it with shelter upon his premises, the father is deemed to be a keeper of the dog."

*Id*.

¶ 37. The *Koetting* decision lacks relevance to this case for several reasons. First of all, it equates an adult daughter to a child. Second, the statement from *Hagenau* that *Koetting* relies upon is dicta, *Koetting* having nothing to do with a father's responsibility for a child dog owner. Third, even if the father was the keeper of his daughter's dog at certain times under certain circumstances, the *Koetting* decision ignores the *Janssen* distinction between a legal owner and a limited

819

keeper. *See Koetting*, 223 Wis. at 558–59. This is a distinction that the majority also fails to address here, limiting its holding only to whether Seefeldt was a keeper. The *Koetting* decision earlier established that the plaintiff must not only show facts "which made [the defendant] the keeper of the dog," but must also show facts "*which brought the circumstances of the injury within the [strict liability] statute.*" *Id.* at 552 (emphasis added). Unfortunately, the *Koetting* court abandoned the latter standard, ignoring the *Janssen* proviso, as does the majority in this case.

¶ 38. The *Armstrong* case, cited in the majority as favorable to *Koetting*, addressed whether a person employed to care for dogs at a dog kennel is a "keeper" of a dog under WIS. STAT. § 174.02(1). *Armstrong*, 202 Wis. 2d at 260. *Armstrong* relates that the "[r]esolution of this appeal therefore requires this court to interpret a statute *as it applies to a set of facts.*" *Id.* at 264. *Armstrong* held, under its set of facts, that "where a [dog] keeper is injured by the dog and there is no evidence of negligence on the part of the legal owners, a keeper may not recover damages from the legal owners of the dog under § 174.02(1)."

¶ 39. *Armstrong* is inapposite. This is not a case about a keeper suing an owner for injuries inflicted by the dog. Furthermore, *Armstrong* does not address *Janssen* or distinguish the liability of a keeper from an owner where the facts support the termination of dual responsibility of the keeper by the dog owner, the situation present here.

¶ 40. The majority terminates its analysis after concluding that Seefeldt was a keeper of the dog. The majority fails to address whether Seefeldt's keeper status, limited by Waterman's legal ownership of the dog in question, was terminated by Waterman's pres-

ence and his assumption of dominion and control over the dog at the time of the injury to Colleen. Such an analysis is mandated by the language in *Janssen*, and Seefeldt is entitled to the application of all legal precedent applicable to her liability.

¶ 41. It is unfortunate that Waterman's dog caused injury to Colleen. It is also unfortunate that Waterman cannot be located for the purpose of this litigation. *See* Majority, ¶ 5. However, this court has no authority to ignore the *Janssen* holding when analyzing Seefeldt's strict liability exposure for injury caused by Waterman's dog.

¶ 42. Because the majority fails to fully acknowledge and address the *Janssen* decision relating to the relinquishment of Seefeldt's limited keeper status to Waterman at the time of the injury to Colleen, I respectfully dissent. Applying the *Janssen* distinction to the undisputed facts and circumstances here, specifically the distinction between a limited keeper and a legal owner of the dog at the time of injury, the record supports the trial court's summary judgment conclusion. I would affirm the trial court summary judgment.