Colleen PAWLOWSKI and Thomas Pawlowski,
Plaintiffs-Appellants,

v.

AMERICAN FAMILY MUTUAL INS. CO. and Nancy L.
Seefeldt, Defendants-Respondents-Petitioners.

Supreme Court

*No. 2007AP2651. Oral argument October 13, 2009.
—Decided December 29, 2009.*

2009 WI 105

(Also reported in 777 N.W.2d 67.)

For the defendants-respondents-petitioners there were briefs by *Sandra L. Hupfer, Christina L. Peterson, Kathryn M. Ver Boort,* and *Stellpflug Law, S.C.,* De Pere, and oral argument by *Sandra L. Hupfer.*

For the plaintiffs-appellants there was a brief by *Michael S. Siddall, Andrew J. Rossmeissl,* and *Herrling*

*Clark Law Firm Ltd.*, Appleton, and oral argument by *Michael S. Siddall* and *Andrew J. Rossmeissl.*

An amicus curiae brief was filed by *Timothy M. Barber,* and *Axley Brynelson, LLP,* Madison and *William C. Gleisner III,* and *the Law Offices of William Gleisner,* Milwaukee, on behalf of the Wisconsin Association for Justice.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals[1] reversing a judgment of the Circuit Court for Winnebago County, Thomas J. Gritton, Judge. The circuit court granted summary judgment to the defendants, American Family Mutual Insurance Company and their insured, Nancy L. Seefeldt (collectively referred to as Ms. Seefeldt), against the plaintiffs, Colleen Pawlowski and her husband, Thomas Pawlowski. The circuit court concluded that there were no genuine issues of material fact and that Ms. Seefeldt was not a "keeper" of a dog, that is, that she was not a statutory owner of the dog under Wis. Stat. § 174.02 (2007–08)[2] at the time of the dog bite incident. According to the circuit court, Ms. Seefeldt was not exercising control over the dog at the time of the dog bite incident. The circuit court concluded that Ms. Seefeldt is not liable to the plaintiffs for damages under the statute. The circuit court also concluded that judicial public policy precluded liability.

¶ 2. The court of appeals reversed the judgment of the circuit court, holding that Ms. Seefeldt "was a keeper of the dog and remained a keeper" at the time of the plaintiffs' injury and therefore "is strictly liable as a statutory owner under Wis. Stat. § 174.02." The court of

---

[1] *Pawlowski v. Am. Family Mut. Ins. Co.,* 2009 WI App 7, ¶ 28, 315 Wis. 2d 799, 762 N.W.2d 802.

[2] All references to the Wisconsin Statutes are to the 2007–08 version, unless otherwise indicated.

appeals concluded that Ms. Seefeldt was, under the circumstances of the present case, a statutory owner of the dog as a keeper of the dog at the time of the dog bite incident and that she was liable under the statute for damages to the plaintiffs. We affirm the decision of the court of appeals.

¶ 3. The issue before this court is whether a homeowner is liable under Wis. Stat. § 174.02, as a person who either "harbors" or "keeps" a dog, for injuries caused by a dog she allows to reside in her home when the dog injures a third party after the unleashed dog is allowed out of the house by its legal owner.

¶ 4. Under Wis. Stat. § 174.02, a person who owns, harbors, or keeps a dog is liable for damages caused by the dog injuring or causing injury to a person. It is undisputed that Ms. Seefeldt does not own the dog in question. The dispositive question, therefore, is whether under the facts of this case Ms. Seefeldt is liable under the statute as a person who either "harbors" or "keeps" the dog that bit Colleen Pawlowski.

¶ 5. Ms. Seefeldt argues that she was not a "keeper" or "harborer" of the dog for purposes of Wis. Stat. § 174.02 at the time of the dog bite incident because Mr. Waterman, the dog's owner, had "full custody, control and dominion over the dog" at that time and that her limited dominion as a keeper was terminated when Mr. Waterman left the house with the unleashed dogs.[3] She claims that at that moment, the "dual authority" shared by her and Mr. Waterman was "merged in the owner," and her "responsibilities concerning the dog [were] at

---

[3] Ms. Seefeldt urges that a homeowner should not be held strictly liable under Wis. Stat. § 174.02 for injuries caused by a "tenant/houseguest's dog" where: (1) the homeowner did not have custody or control of the dog at the time of injury; (2) there is not a familial relationship between the homeowner and the

an end."[4] She also asserts that judicial public policy precludes recovery by the plaintiffs.[5]

¶ 6. In contrast, the plaintiffs argue that Ms. Seefeldt was an "owner," that is, one who harbors or keeps a dog, regardless of whether she was in immediate control of the dog at the time the injury occurred. The plaintiffs assert that Ms. Seefeldt had not relinquished her "owner" status under the statute at the time of the dog bite incident.

¶ 7. We conclude that Ms. Seefeldt harbored the dog and was thus a statutory "owner" of the dog under Wis. Stat. § 174.02 at the time of the dog bite incident. Her status as a harborer of the dog was not extinguished when the dog's legal owner took momentary control of the dog. We also conclude that the traditional public policy factors that delimit tort liability in Wisconsin do not bar recovery in the present case. Accordingly, we affirm the decision of the court of appeals.

I

¶ 8. The undisputed facts are taken from the depositions submitted as part of the summary judgment motions.

---

dog-owning tenant/houseguest; and (3) the homeowner does not provide the sole source of lodging, board, and support for the dog and its owner.

[4] Ms. Seefeldt relies on this language from *Janssen v. Voss,* 189 Wis. 222, 224, 207 N.W. 279 (1926).

[5] At the circuit court, Ms. Seefeldt argued that she was not liable for double damages under § 174.02(1)(b) because she had no notice or knowledge that the dog had previously caused injury to another person. The parties did not argue about Ms. Seefeldt's notice or knowledge in the court of appeals and do not argue this issue in this court. Damages have not yet been tried in the present case.

¶ 9. In June or July of 2003, Ms. Seefeldt agreed to let Walter Waterman, an acquaintance of her daughter, move into her home when he was unemployed and needed a place to stay where he could keep his two dogs. Ms. Seefeldt had three of her own dogs and a large fenced backyard. Mr. Waterman never paid rent; they apparently had an informal arrangement that Mr. Waterman would help with some home repairs and housekeeping.

¶ 10. Ms. Seefeldt reported that when Mr. Waterman moved in, she was told that the dogs, Boo and Diesel, were friendly, but she also acknowledged that Mr. Waterman told her that Boo had recently nipped a six-year-old girl on the arm and frightened her. Ms. Seefeldt stated she was not told of any other incident in which Boo injured anyone.

¶ 11. On the afternoon of October 26, 2003, as Colleen Pawlowski walked in front of Ms. Seefeldt's home, she heard a sound like a door opening and saw Mr. Waterman's two unleashed dogs jump off the porch and charge her. Mr. Waterman chased the dogs and shouted to stop them but was unable to bring them under his control. Boo jumped up on Colleen Pawlowski and tried to bite her left shoulder, tearing her coat. The dog then bit at her left thigh and finally punctured her calf, causing Ms. Pawlowski to fall to her knee before Mr. Waterman was able to control both dogs. Although her shoulder and thigh were uninjured, Ms. Pawlowski did suffer puncture wounds to her calf.

¶ 12. Mr. Waterman then grabbed the dogs and held them as he offered to give Colleen Pawlowski a ride home, which she declined. Colleen Pawlowski observed that the skin was broken and told Mr. Waterman she would need to go to the emergency room. She then walked to the end of the street, to the home of a neighbor whom she knew, and asked the neighbor for a ride.

¶ 13. At the time the attack occurred, Ms. Seefeldt was at home. She did not see the attack and did not learn of it until a police officer came to her door to investigate later that day. Following the attack, Mr. Waterman apparently proceeded to the grocery store, taking his dogs with him. When he returned to the house, Ms. Seefeldt asked him about the attack and Mr. Waterman relayed that when he had opened the door to leave for the grocery store the dogs had run into the street, toward Colleen Pawlowski, instead of running to the car. He told her that Boo bit Colleen Pawlowski and that he had offered Ms. Pawlowski a ride home or to the doctor, but that she declined the offer. Ms. Seefeldt told Mr. Waterman that Boo should be put to sleep, but she apparently did not seek further information about the incident. One to two weeks later, Ms. Seefeldt asked Mr. Waterman and his dogs to leave her home.

¶ 14. Mr. Waterman is not and has never been a named defendant and has not been located for purposes of discovery and litigation. Both a legal owner and statutory owner of a dog can be simultaneously strictly liable under Wis. Stat. § 174.02.[6]

## II

¶ 15. We review summary judgment decisions using the same standards and method as are applied by

---

[6] *Fire Ins. Exch. v. Cincinnati Ins. Co.*, 2000 WI App 82, ¶ 17, 234 Wis. 2d 314, 610 N.W.2d 98 ("Reading the statute to allow both owners and keepers to be liable comports with the statute's policy of assigning responsibility to those in a position to protect innocent third parties from dog bites.").

the circuit court. Under Wis. Stat. § 802.08(2),[7] a moving party is entitled to summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[8] A court may also determine that the nonmoving party is entitled to summary judgment. Wis. Stat. § 802.08(6).

■■

¶ 16. Interpretation of a statute and application of a statute to undisputed facts (as in the present case) are generally questions of law that this court determines independently of the court of appeals and circuit court but benefiting from the analyses of these courts.[9] Application of judicial public policy factors is a question of law that this court determines independently of the court of appeals and circuit court but benefiting from the analyses of these courts.[10]

III

■

¶ 17. We begin by examining the language of the applicable statute. Wisconsin Stat. § 174.02 provides that "the owner of a dog is liable for the full amount of

---

[7] *Trinity Evangelical Lutheran Church & Sch.-Freistadt v. Tower Ins. Co.,* 2003 WI 46, ¶ 25, 261 Wis. 2d 333, 661 N.W.2d 789; *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

[8] *Olson v. Town of Cottage Grove,* 2008 WI 51, ¶ 34, 309 Wis. 2d 365, 749 N.W.2d 211.

[9] *Malone v. Fons,* 217 Wis. 2d 746, 763, 580 N.W.2d 697 (Ct. App. 1998) ("Determining whether Fons may be held strictly liable under § 174.02, Stats., involves the construction and application of a statute to a set of undisputed facts, which is a task we perform *de novo*.").

[10] *Fandrey ex rel. Connell v. Am. Family Mut. Ins. Co.,* 2004 WI 62, ¶ 6, 272 Wis. 2d 46, 680 N.W.2d 345.

damages caused by the dog injuring or causing injury to a person." Section 174.02 is a strict liability statute. If the owner "was notified or knew that the dog previously injured or caused injury to a person," then the victim can recover double damages.

¶ 18. The liability provisions of Wis. Stat. § 174.02 provide as follows:

> § 174.02(1)(a). *Without notice.* Subject to s. 895.045 and except as provided in s. 895.57(4), the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property.
>
> § 174.02(1)(b). *After notice.* Subject to s. 895.045 and except as provided in s. 895.57(4), the owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property.

¶ 19. Critically here, the statutory "owner" of a dog is defined for purposes of Wis. Stat. § 174.02 more inclusively than simply a legal owner of the dog. Wisconsin Stat. § 174.001(5) defines the word "owner" as including "any person who owns, harbors or keeps a dog."[11] The statutes do not define the words "harbors" or "keeps." The definition of "owns" is not important here because no one argues that Ms. Seefeldt is the legal owner of the dog.

---

[11] The statutory definition applicable to this case was codified as § 174.001(5) by 1979 Wis. Act 289. The present statutory language plainly defines the singular term "owner" used in § 174.02 to include the legal owner as well as one who "harbors" or "keeps" a dog.

¶ 20. Whether a person is one who "harbors" or "keeps" a dog is ordinarily a factual question for the fact finder and "depends upon the peculiar facts and circumstances of each individual case."[12] Here the facts are undisputed, and the question of law presented is whether Ms. Seefeldt is a "statutory owner" of the dog, as defined in § 174.001(5), that is, whether on the established facts she is one who "harbors" or "keeps" Boo.

¶ 21. Ms. Seefeldt argues that there appears to be little distinction between a "harborer" and "keeper." We agree that some dictionary definitions of these two words are similar and that the words seem to have overlapping meanings.[13] We decline, however, to hold that there is no distinction between the words.

¶ 22. As a basic rule of statutory construction, we endeavor to give each statutory word independent meaning so that no word is redundant or superfluous. When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings.[14]

---

[12] *Hagenau v. Milliard,* 182 Wis. 544, 547, 195 N.W. 718 (1923). *See also* John P. Ludington, Annotation, *Who "Harbors" or "Keeps" Dog Under Animal Liability Statute,* 64 A.L.R. 4th 963, § 2(a) (1988) ("The question of who is the keeper or harborer of a dog is ordinarily a question of fact for the factfinder, which turns on all the circumstances of the case.").

[13] Ms. Seefeldt notes that Webster's New Collegiate Dictionary defines "harbor" as "to have 'an animal' in one's keeping."

[14] *Donaldson v. State,* 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980) ("A statute should be construed so that no word or clause shall be rendered surplusage and every word if possible should be given effect."); *Graziano v. Town of Long Lake,* 191 Wis. 2d 812, 822, 530 N.W.2d 55, 59 (Ct. App. 1995) ("[W]here the

The use of different words joined by the disjunctive connector "or" normally broadens the coverage of the statute to reach distinct, although potentially overlapping sets.

¶ 23. The distinction between one who "keeps" and one who "harbors" a dog has not been crisp over the years either in the dog injury statutes or in the case law.

¶ 24. "[E]arly Wisconsin cases appear to use these terms interchangeably."[15] In *Hagenau v. Millard,* 182 Wis. 544, 547, 195 N.W. 718 (1923), the court defined a "keeper" of a dog as one who harbored the dog. The court stated that "[t]o be a keeper of a dog, one must harbor the animal, and the word 'harbor' in its meaning signifies protection . . . ." The 1923 statutory provision at issue in *Hagenau* used the words "keeper" and "owner," not the word "harbor." Other 1923 statutory provisions governing dogs used the words "harbors" and "keeps."[16]

---

legislature uses similar but different terms in a statute, particularly within the same section, we may presume it intended the terms to have different meanings.").

[15] *Pattermann v. Pattermann,* 173 Wis. 2d 143, 150 n.4, 496 N.W.2d 613 (Ct. App. 1992).

[16] In 1923, when this court interpreted the term "keeper" in *Hagenau,* 182 Wis. at 547, the underlying statute, Wis. Stat. § 174.02 (1923), read, "the *owner or keeper* of any dog which shall have injured or caused the injury of any person . . . shall be liable to the person so injured" (emphasis added). Another provision of the 1923 statutes, Wis. Stat. § 174.05 (1923), sub-titled "Dog licenses; application for," stated that "the word 'owner' when used in chapter 174 . . . in relation to property in, or possession of, dogs shall include every person who owns, harbors or keeps a dog."

The 1923 statutes further muddied the water. The provisions in the 1923 version of chapter 174 refer to both "the

¶ 25. In *Hagenau,* the court concluded that the proprietor of a restaurant and lodging house was not the keeper of his employee's dogs when the employee kept the dogs in a separate apartment on the third floor where the employee "maintained a separate and distinct home or place of abode." *Hagenau,* 182 Wis. at 546, 548, 549.

¶ 26. The distinction between "keep" and "harbor" was discussed more recently by the court of appeals in *Pattermann v. Pattermann,* 173 Wis. 2d 143, 496 N.W.2d 613 (Ct. App. 1992). "Keeping," stated the court of appeals in *Pattermann,* generally requires "exercising some measure of care, custody or control over the dog," while " 'harboring' is often defined as sheltering or giving refuge to a dog. Thus, 'harboring' apparently lacks the proprietary aspect of keeping."[17]

¶ 27. According to the *Pattermann* decision, " '[h]arboring a dog' means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog."[18] Thus the court of appeals distinguished "harboring" a dog from "keeping" a dog, concluding that harboring "means to afford lodging, to shelter or to give refuge to a dog."[19]

person owning or harboring such dog," § 174.03, and the "owner or keeper" of a dog. *See, e.g.,* §§ 174.02, .04.

[17] *Pattermann v. Pattermann,* 173 Wis. 2d 143, 149 n.4, 496 N.W.2d 613 (Ct. App. 1992) (citing Ludington, 64 A.L.R. 4th at 969). The comment in *Pattermann* that a landowner could be liable under a common law negligence theory for injuries caused by a known dangerous dog allowed on her premises was abrogated in *Smaxwell v. Bayard,* 2004 WI 101, ¶ 42 n.8, 274 Wis. 2d 278, 306, 682 N.W.2d 923.

[18] *Pattermann,* 173 Wis. 2d at 151.

[19] *Id.*

¶ 28. In *Pattermann,* the court of appeals concluded that the defendant homeowner who allowed the dog in his home for a short time did not harbor or keep the dog. In contrast to the present case, the dog did not live in the house, and the homeowner had not "fed or cared for the dog in any way."[20]

¶ 29. Under the *Pattermann* definition of harboring, which we adopt, Ms. Seefeldt "harbored" Boo. She allowed the dog to live in her home for several months, affording the dog shelter and lodging. As Ms. Seefeldt's reply brief describes the situation, Ms. Seefeldt was "temporarily providing refuge" to the dog.

¶ 30. Most of the reported cases interpreting "owner" under Wis. Stat. § 174.02 have focused on the word "keeper," rather than on the word "harbor." The case law has examined several aspects of being a "keeper," and the cases state the attributes of a keeper somewhat differently. According to the cases, to be a keeper a person must exercise "some measure of custody, care or control over the dog";[21] have custody, dominion or authority over the dog even though the keeper's dominion or authority is a limited one subject to being terminated by the owner;[22] or keep the dog at the

---

"Keeping is often defined in terms of the three Cs—that is, that keeping is exercising some measure of care, custody, or control over a dog. Harboring . . . is usually defined as sheltering or giving refuge to a dog." Ludington, *supra* note 12, at 963, § 2[a].

[20] *Patterman,* 173 Wis. 2d at 150.

[21] *Pattermann,* 173 Wis. 2d at 149, n.4. *See also Armstrong v. Milwaukee Mut. Ins. Co.,* 202 Wis. 2d 258, 267, 549 N.W.2d 723 (1996) (citing *Hagenau,* 182 Wis. at 547–48) (exercise control over, or furnish with shelter, protection, or food).

[22] *Janssen v. Voss,* 189 Wis. 222, 224, 207 N.W. 279 (1926).

person's dwelling and feed the dog.[23] The casual presence of a dog will not transform a person into a keeper; there must be evidence that the person has furnished the dog with shelter, protection, or food or exercised control of the dog.

¶ 31. Relying on the case law discussion of the words "harbor" and "keep" and the distinction between "harbor" and "keep" set forth in *Pattermann,* and acknowledging the sometimes overlapping meaning of the words "harbor" and "keep" (and their variations), we conclude that Ms. Seefeldt is a person who harbored the dog at issue. The court of appeals viewed Ms. Seefeldt as a keeper of the dog because she sheltered, maintained, and protected the dog on her premises.[24] That this court and the court of appeals characterize Ms. Seefeldt differently under Wis. Stat. § 174.02 is not significant. The concepts of "harbor" and "keep" are similar, and the liability of one who harbors a dog and one who keeps a dog is the same.

¶ 32. We further conclude that Ms. Seefeldt had not relinquished her status as a statutory owner when the dog bit Colleen Pawlowski. Our conclusion is supported by the case law. In essence we agree with the court of appeals' analyses of the cases that inform our decision.

¶ 33. Three key cases, *Janssen v. Voss,* 189 Wis. 222, 207 N.W. 279 (1926), *Koetting v. Conroy,* 223 Wis. 550, 270 N.W. 625 (1936), and *Armstrong v. Milwaukee Mutual Insurance Co.,* 202 Wis. 2d 258, 549 N.W.2d 723 (1996), do not support Ms. Seefeldt's position that she

---

[23] *Koetting v. Conroy,* 223 Wis. 550, 552, 270 N.W.625 (1936) (citing *Hagenau,* 182 Wis. at 547).

[24] *See Pawlowski,* 315 Wis. 2d 799, ¶¶ 11–14.

lost her status as a statutory owner when Mr. Waterman was exercising dominion and control over the dog during the dog bite incident.

¶ 34. In *Janssen,* the mother of a 14–year-old boy left town for a funeral, arranging for her son's dog to be kept at a dog hospital.[25] The mother left explicit instructions that the dog should remain at the hospital during her absence. In spite of these instructions, the son removed the dog from the hospital and tied it in the yard of the house where he was staying. The dog bit a 17–month-old infant, and the mother was sued.

¶ 35. It was conceded in *Janssen* that the mother was the keeper of the dog until she left for the funeral. She had bought the dog, given it to the son, maintained the dog in her home at her expense, and exercised control over the dog for more than a year prior to the incident.

¶ 36. The *Janssen* court held that under the circumstances in which the mother had turned over all control to the dog hospital during her absence, and the son who was legal owner took personal custody and possession of the dog, "he thereby became the legal keeper."[26] The complaint against the mother was dismissed because the owner-son had terminated the mother's status as a keeper.[27]

¶ 37. Ms. Seefeldt argues that she was not a statutory owner because she did not have control or dominion over the dogs "at that very moment" when the

[25] The court interpreted "keeper" without reference to the statutory definition of "owner" in the then-current version of § 174.05, which effectively defined "owner" as does the present statute.

[26] *Janssen,* 189 Wis. at 225.

[27] *Id.* at 224.

attack occurred. Her argument relies principally on the following language from *Janssen,* 189 Wis. at 224:

> Where the keeper is not the owner, it may be assumed, as a general proposition, that the dominion or authority of the keeper over the dog is a limited one, subject to be terminated at any time by the owner. In the absence of special circumstances, the owner may terminate the dominion of the keeper over the dog at any time and remove the dog from the custody of the keeper. The moment that is done, the dual authority theretofore exercised over the dog by the owner and the keeper is merged in the owner, and at that very moment the keeper's rights and responsibilities concerning the dog are at an end.

¶ 38. Reliance on this language is unavailing. *Janssen* would be on point had Ms. Seefeldt left town and had the dog been removed from the Seefeldt home.

¶ 39. Ten years after *Janssen,* this court decided *Koetting v. Conroy,* 223 Wis. 550, 270 N.W. 625 (1936).[28] *Koetting,* like *Janssen,* involved a parent homeowner who was not present at the time of the injury. In *Koetting,* an adult woman lived with her father "as a member of his family."[29] She received board, lodging, and support from her father. She kept her dog in the family home. She took her dog to a public park and let it off its leash. The plaintiff, who was injured when the dog knocked her down, sued both the dog's owner and the owner's father.

¶ 40. In *Koetting,* although the father was not present at the time of the injury and had no knowledge

---

[28] The statutory language in *Koetting* was for present purposes identical to the language applicable in *Hagenau* and *Janssen.*

[29] *Koetting v. Conroy,* 223 Wis. 550, 552, 270 N.W. 625 (1936).

that the daughter had taken the dog out of the house at the time of the injury, the father was held to be a keeper under the statute. The father did know that the daughter was in the habit of taking the dog out.[30]

¶ 41. The *Koetting* opinion explicitly referenced the statutory definition in § 174.05, "providing that one who 'harbors' a dog makes him the owner."[31] The *Koetting* court also specifically rejected the defendant's interpretation of the *Hagenau* and *Janssen* cases as holding that "the keeper is not liable for injuries done by a dog if the dog is under the control of another at the immediate time."[32]

¶ 42. The *Koetting* court distinguished the *Hagenau* and *Janssen* cases, reasoning that in *Janssen* the mother had "particularly exempted herself from being [the dog's] keeper by causing the dog to be kept for the period of her absence in a dog hospital. To be within the rule of [*Janssen*] the defendant [father] should have refused to permit the dog to be kept on his premises, should have compelled the daughter to keep it or have it kept elsewhere."[33] The *Koetting* court expressly rejected the argument that the keeper is not liable for injuries done by a dog if the dog is under the control of another at the time of the dog bite incident.[34]

---

[30] In *Koetting,* 223 Wis. at 557, the father was found not liable under the version of Wis. Stat. § 174.02 then in existence, which required that the dog be "either vicious or mischievous," a condition which was not met.

[31] *Koetting,* 223 Wis. at 551.

[32] *Id.* at 555.

[33] *Id.* The *Koetting* court mistakenly cited the *Hagenau* case instead of the *Janssen* case.

[34] *Koetting,* 223 Wis. at 555.

¶ 43. As the court of appeals correctly recognized in the present case, "the holding in *Koetting* appears to govern the outcome in this case."[35] The *Koetting* court plainly rejected the argument that moment-to-moment control is required in order to be a keeper of the dog.

¶ 44. The *Koetting* court concluded that the father had not given up his statutory owner status even though the dog owner took the dog out of the house and had control and dominion over the dog. The father's liability as a keeper depended on his keeping the dog in the house and feeding it, not his moment-to-moment control over the dog.

¶ 45. When the injury occurred not at the house but in a public park, and the legal owner's father was not even present, the *Koetting* court recognized that the father "doubtless exercised no control over the [adult daughter's] dog except that he controlled whether the dog should be kept in his home or not, and whether it should be fed from the family larder or not, but that sort of control is the thing that, in view of the statute and the cases . . ., make [sic] him the dog's keeper."[36] Although the father had argued "that a person is not the keeper of a dog unless it is under his custody and control," the court found that view "too narrow."[37]

¶ 46. Court of Appeals Judge Snyder in dissent saw a tension between *Janssen* and *Koetting*. He asserted that in both cases the legal owner had control over the dog, and the alleged "keeper" had no control. Yet the two cases reach opposite results. Although there appears to be a superficial tension between the cases, the cases can be reconciled. In *Janssen,* the keeper's

---

[35] *Pawlowski,* 315 Wis. 2d 799, ¶ 23.

[36] *Koetting,* 223 Wis. at 554.

[37] *Id.*

relationship with the dog was terminated by the owner's actions. In *Koetting,* neither the keeper nor the owner took action to terminate the keeper's relationship with the dog.

¶ 47. Ms. Seefeldt insists that *Koetting* does not apply. We are not persuaded. The holding in *Koetting,* as in *Janssen,* did not depend on the family relationship between the dog owner and the homeowner but rather on the fact that the father allowed the dog to remain in his home and cared for the dog. The father had not relinquished keeper status. *Koetting* cannot be distinguished on the grounds that the dog owner was related to the homeowner who served as the sole source of lodging, board, and support for both the dog and its owner, and the dog owner had taken no action to terminate the keeper's limited control, custody, or care of the dog.

¶ 48. The facts of the present case are directly analogous to the facts in *Koetting.* In *Koetting* and in the present case, an adult was the legal owner of the dog and was in immediate control of the dog at the time of the dog bite incident. The homeowner in *Koetting* and the homeowner in the present case, unlike the homeowner in *Janssen,* had taken no affirmative action to relinquish control over the dog to another.

¶ 49. *Armstrong v. Milwaukee Mutual Insurance Co.,* 202 Wis. 2d 258, 549 N.W.2d 723 (1996), also supports our conclusion that Ms. Seefeldt is liable under Wis. Stat. § 174.02. In *Armstrong,* the vacationing dog owners left the dog at a kennel. The dog bit a part-time employee of the kennel, and the question presented was whether the employee was a keeper under § 174.02. The court concluded that the employee was a keeper because the owners had affirmatively relinquished physical custody and control over the dog.

41

The court recognized that while a person's status as keeper can change over time, with the focal point being the time of the injury, the owners affirmatively relinquished physical custody to a kennel. The *Armstrong* court favorably cited *Koetting*.

¶ 50. Here, Ms. Seefeldt took neither "affirmative" nor "explicit" steps to terminate her harboring of the dog before the dog bite incident. Indeed, the dog continued to live in her home for some time after the dog bite incident. When a homeowner has become a statutory owner by virtue of the dog's living in her residence for several months, that status does not vary on a minute-to-minute basis, depending on which person happens to open the door to let the dog run free.

¶ 51. Ms. Seefeldt's argument that she is akin to a "pro bono landlord" also does not command a different outcome than the one we reach. Ms. Seefeldt does not argue that she and Mr. Waterman have landlord-tenant relationship. Rather, she argues only that their relationship is similar to that of landlord-tenant.

¶ 52. The landlord-tenant dog bite cases in which the landlord was not held liable under Wis. Stat. § 174.02 are inapposite to the case at hand. Ms. Seefeldt's reliance on *Gonzales v. Wilkinson,* 68 Wis. 2d 154, 227 N.W.2d 907 (1975), *Malone v. Fons,* 217 Wis. 2d 746, 580 N.W.2d 697 (Ct. App. 1998), and *Smaxwell v. Bayard,* 2004 WI 101, 274 Wis. 2d 278, 682 N.W.2d 923, is misplaced.[38] *Gonzales* and *Smaxwell* are negligence cases, not strict liability cases under Wis. Stat. § 174.02. Furthermore, these cases are traditional landlord-tenant cases, in which the tenant-owner of the dog occupied and maintained a separate residence from the

---

[38] In *Hagenau,* 182 Wis. at 547–49, the court also held that the landlord was not the keeper of the tenant's dogs.

landlord. In such cases the landlord had limited control over the tenant's premises. In contrast, in the present case Mr. Waterman occupied a bedroom in Ms. Seefeldt's home. He is more akin to a houseguest than a tenant.

¶ 53. In *Gonzales,* the plaintiff sought recovery against the owner-occupant of a duplex for injuries caused by the dog owned by the tenant who lived in the other unit of the duplex. Liability was sought against the owner-occupant under attractive nuisance and negligence theories.[39] The court concluded that the dog was not an attractive nuisance and that the complaint was not sufficient to state a cause of action against the owner-occupant for negligence.

¶ 54. The *Gonzales* court further explained that there was no allegation that the owner-occupant was either an owner or keeper of the dog or had any dominion over the dog. The court stated that although the owner-occupant knew of the dog, the law does not require him as the owner of the building to be an insurer for the acts of his tenant. Unlike *Gonzales,* this is a Wis. Stat. § 174.02 case, and the Seefeldt home is not a duplex; rather, both Ms. Seefeldt and Mr. Waterman, along with their dogs, lived in the same undivided residence.

¶ 55. In *Malone v. Fons,* 217 Wis. 2d 746, 580 N.W.2d 697 (Ct. App. 1998), the dog owner kept his dog in his own separate rented premises. The court held that a landlord does not become a harborer of a tenant's dog merely by permitting a tenant to keep a dog. The landlord was not liable under § 174.02.[40]

---

[39] *Gonzales v. Wilkinson,* 68 Wis. 2d 154, 155–56, 227 N.W.2d 907 (1975).

[40] *Malone v. Fons,* 217 Wis. 2d 746, 750–51, 580 N.W.2d 697 (Ct. App. 1998).

¶ 56. In *Smaxwell v. Bayard*, 2004 WI 101, 274 Wis. 2d 278, 682 N.W.2d 923, in which the victim of a dog bite asserted a negligence claim against a landlord, the court declined to hold that the landowner was liable for failure to maintain her property by allowing known dangerous dogs to run at large on the property. Rather, the court precluded liability in this negligence case based on judicial public policy factors.[41]

¶ 57. These dog bite cases support our conclusion that Ms. Seefeldt is a harborer and is liable for the injuries the plaintiffs sustained as a result of the dog bite.

## IV

¶ 58. We turn now to the question whether Ms. Seefeldt's liability is precluded by judicial public policy considerations.

¶ 59. The six "traditional public policy factors" are identified in *Colla v. Mandella*, 1 Wis. 2d 594, 598–99, 85 N.W.2d 345 (1957), as follows:

> [E]ven where the chain of causation is complete and direct, recovery against the negligent tort-feasor may sometimes be denied on grounds of public policy because [1] the injury is too remote from the negligence or [2] too "wholly out of proportion to the culpability of the negligent tort-feasor," or [3] in retrospect it appears too

---

[41] *Smaxwell v. Bayard*, 274 Wis. 2d 278, ¶ 39.

The *Smaxwell* court declared, "based on public policy factors, that common-law liability of landowners and landlords for negligence associated with injuries caused by dogs is limited to situations where the landowner or landlord is also the owner or keeper of the dog causing injury." *Smaxwell*, 274 Wis. 2d 278, ¶ 54.

highly extraordinary that the negligence should have
brought about the harm, or [4] because allowance of
recovery would place too unreasonable a burden upon
[a class of tortfeasors], or [5] be too likely to open the
way to fraudulent claims, or [6] would "enter a field
that has no sensible or just stopping point."

¶ 60. These six judicial public policy consider-
ations have been used to bar liability in a dog bite case
under Wis. Stat. § 174.02. In *Fandrey ex rel. Connell v.
American Family Mutual Insurance Co.*, 2004 WI 62,
¶ 8, 272 Wis. 2d 46, 680 N.W.2d 345, we held that
"courts may use the six traditional public policy factors
to bar a claim under § 174.02, even if a plaintiff
otherwise establishes liability."

¶ 61. In *Fandrey*, decided on summary judgment
like the present case, a three-year-old girl and her
mother entered the home of their friends while the
friends were not home, without either express or im-
plied consent, and knowing that the family dog was
normally kept in the home. The young girl then wan-
dered away from her mother and was bitten by the dog.
The circuit court concluded that the owners could not
have done anything "more restrictive than to keep the
dog inside their home,"[42] as they had done. Applying
judicial public policy factors, the circuit court denied
liability.

¶ 62. On review, the court began with the obser-
vation that Wis. Stat. "§ 174.02 imposes strict liability"
and "obviates the need for a plaintiff to prove specific
acts of negligence in each case."[43] The court recognized
that "[w]hen we preclude liability based on 'public policy

---

[42] *Fandrey ex rel. Connell v. Am. Family Mut. Ins. Co.*, 2004
WI 62, ¶ 5, 272 Wis. 2d 46, 56, 680 N.W.2d 345.

[43] *Id.*, ¶ 9.

factors' . . . [w]e do so in order to assure that 'in cases so extreme that it would shock the conscience of society to impose liability, the courts may step in and hold as a matter of law that there is no liability.' "[44] Acknowledging the "sometimes-harsh results . . . under § 174.02," the court held that the judicial public policy factors may "limit liability in appropriate cases under § 174.02."[45]

¶ 63. This case, however, although arguably "harsh," does not provide an appropriate instance to draw a judicial limit on the strict liability imposed by § 174.02. In the present case, application of judicial public policy to bar liability would undermine the legislative decision to impose strict liability on a statutory owner of a dog. The instant case is significantly different from *Fandrey*.

¶ 64. In *Fandrey*, three of the public policy factors weighed against allowing liability. Here none of these factors is present.

¶ 65. With regard to the first judicial public policy factor, we concluded in *Fandrey* that recovery would be too disproportionate to the culpability of the dog's owners.[46] In that case, "essentially the only thing [the owners] did 'wrong' . . . was to leave their door unlocked."[47] At times when the owners were at home with the dog, they "made a conscious effort" to separate the dog from children.[48] Here, Ms. Seefeldt's desire to assist Mr. Waterman was well-intentioned, but it does not appear she made "a conscious effort" to reduce the risks

---

[44] *Id.*, ¶ 15 (quoted source omitted).

[45] *Id.*, ¶ 26.

[46] *Id.*, ¶ 34.

[47] *Id.*

[48] *Id.*

of another dog injury. Although she states that she had never seen Mr. Waterman let the dogs out of the front door without a leash prior to the attack on Colleen Pawlowski, she does not claim to have enforced a leash rule. Although she claims she would not have let the dog live in her home if she had known of the prior biting incidents, she admitted in a deposition that she "made no inquiries at all as to the temperament of the dog, whether or not it had ever injured anybody." In short, unlike the *Fandrey* case in which there was nothing more within reason the owners might have done to prevent the injury, there are several steps Ms. Seefeldt might have taken.

¶ 66. The second public policy factor applicable in *Fandrey* was that recovery "would place too unreasonable a burden" on dog owners. The court reasoned in *Fandrey* that recovery would force dog owners "prior to leaving their homes, to kennel their dogs, muzzle them, or lock them in cages."[49] Here, recovery does not imply an unreasonable burden on Ms. Seefeldt or others in her position. In allowing an unknown dog to live in one's home, it is not unreasonable that the homeowner take precautions to ensure that the dog is leashed or restrained in some manner when walking in the street.

¶ 67. Ms. Seefeldt contends that "to burden [her] with strict liability . . . makes her an insurer of the legal owner, Waterman." She asserts that blame more properly lies with Mr. Waterman and that she and her insurance company are named as defendants only because their "affluence is more apparent."[50] Nothing in

---

[49] *Id.*, ¶ 35.

[50] *Smaxwell v. Bayard,* 2004 WI 101, ¶ 46, 274 Wis. 2d 278, 682 N.W.2d 923 (quoting *Malone,* 217 Wis. 2d at 767: "Our rule

this opinion bars a suit against Mr. Waterman. The legal owner, the keeper, and the harborer are all liable under Wis. Stat. § 174.02.[51]

¶ 68. The third public policy factor, "perhaps the strongest factor weighing against imposing liability" in *Fandrey,* was that imposing liability "would enter a field that has no sensible or just stopping point."[52] There, the court evaluated a situation where the injured person was tantamount to a trespasser, entering defendant's home without permission. We reasoned that imposing liability in that case would be indistinguishable from making a homeowner liable to a burglar who had "meticulously picked a locked door . . . only to unexpectedly encounter a vigilant hound."[53]

¶ 69. Here, holding Ms. Seefeldt strictly liable as a statutory owner under § 174.02 creates no similarly open-ended liability. The present case does not make a homeowner liable as a statutory "owner" under § 174.02 for a mere "transient invasion"[54] of a dog or for "the

[that a landlord who merely allows a tenant to keep a dog is not liable under Wis. Stat. § 174.02] also promotes the salutary policy of placing responsibility where it belongs, rather than fostering a search for a defendant whose affluence is more apparent than his culpability.").

[51] "Reading the statute to allow both owners and keepers to be liable comports with the statute's policy of assigning responsibility to those in a position to protect innocent third parties from dog bites." *Fire Ins. Exch. v. Cincinnati Ins. Co.,* 2000 WI App 82, ¶ 17, 234 Wis. 2d 314, 327, 610 N.W.2d 98.

[52] *Fandrey,* 2004 WI 62, ¶ 36, 272 Wis. 2d 46, 75, 680 N.W.2d 345.

[53] *Id.,* ¶ 39.

[54] *Pattermann v. Pattermann,* 173 Wis. 2d 143, 151, 496 N.W.2d 613, 616 (Ct. App. 1992).

casual presence of a dog on someone's premises."[55] Nothing in the present opinion overturns or alters *Malone,*[56] *Gonzales,*[57] or *Smaxwell,*[58] addressing the liability of landlords and property owners in negligence, or in strict liability under Wis. Stat. § 174.02 for dogs residing with tenants on the landowners' property.

¶ 70. Beyond the three public policy factors that barred recovery in *Fandrey,* none of the three remaining public policy factors requires a different result here.

¶ 71. Remoteness is the fourth judicial policy factor to consider in denying liability. The injury in the present case is not "too remote" from Ms. Seefeldt's actions to bar recovery. Here, the dog bit a neighbor walking in front of Ms. Seefeldt's home when the uncontrolled dog left the home. This incident is not too remote from the act of harboring the dog to prohibit recovery. Indeed, it is the kind of incident that the statute would ordinarily cover.

¶ 72. Nor does the fifth public policy factor apply. It does not appear in hindsight "too highly extraordinary" that Ms. Seefeldt's giving the dog a home would give rise to the injury here. There is always the risk that a dog will get loose and injure someone. Section 174.02 embodies a legislative judgment that those who own, harbor, or keep a dog are in the best position to reduce the risk of injury and should bear liability for any

---

[55] *Armstrong v. Milwaukee Mut. Ins. Co.,* 202 Wis. 2d 258, 265, 549 N.W.2d 723 (1996).

[56] *Malone v. Fons,* 217 Wis. 2d 746, 580 N.W.2d 697 (Ct. App. 1998).

[57] *Gonzales v. Wilkinson,* 68 Wis. 2d 154, 227 N.W.2d 907 (1975).

[58] *Smaxwell v. Bayard,* 2004 WI 101, 274 Wis. 2d 278, 682 N.W.2d 923.

damages, rather than making those who are injured by no fault of their own suffer without compensation. It is not "highly extraordinary" that providing shelter for a dog in your home may create risks for a passerby if the dog is not properly restrained.

¶ 73. Lastly, this case does not open the door for fraudulent claims, the sixth judicial policy factor. The uncontested facts here demonstrate that Ms. Seefeldt was an owner as defined in § 174.001(5). Factual proof of keeper or harborer status will be required in each case, and here, Ms. Seefeldt's own deposition establishes that the dog lived in her home on more than a transient or casual basis. This fact situation creates no unusual likelihood of fraud.

¶ 74. None of the judicial public policy factors bars the Pawlowskis from recovering from Ms. Seefeldt in the present case.

¶ 75. We need not define the farthest limits of liability of statutory dog owners to decide the present case. Here, it is clear that the dog and its owner lived in a single private residence with Ms. Seefeldt, that the dog resided in the residence for a period of approximately four months, and that both the dog and its legal owner had the homeowner's explicit permission to reside in the home. No authority in dog bite cases has been cited that treats a houseguest or cohabitant in a single residence as a "tenant."

¶ 76. The purpose of Wis. Stat. § 174.02 is "to protect those people who are not in a position to control the dog."[59] Imposing liability in the present case fur-

---

[59] *Armstrong,* 202 Wis. 2d at 268.

*See also Cole v. Hubanks,* 2004 WI 74, ¶ 22, 272 Wis. 2d 539, 681 N.W.2d 147 ("Wisconsin Stat. § 174.02 is a 'strict liability' statute wherein the legislature has made the policy

thers the legislative policy embodied in Wis. Stat. § 174.02 of protecting innocent people from injury by dogs, of ensuring that an innocent victim of a dog bite recovers compensation, and of making a person who owns, harbors, or keeps a dog responsible for injuries inflicted by the dog. The legislative purpose and policy of § 174.02 would be defeated if the court applied judicial public policy factors to preclude liability in the present case.

¶ 77. Court of Appeals Chief Judge Brown aptly summed up the present case as follows:

> As I see it, the purpose of the statute is to protect from harm the surrounding neighbors, passers-by and those who come in proximity to a dog. If a neighbor agrees to keep and shelter a dog in the home, it means the dog is living in that home just as much as would be the case if the homeowner was the legal owner of the dog. Unless and until the homeowner's status as keeper is intentionally terminated in time and space by the dog's removal from the home, that homeowner is strictly liable for any dog-bite injury to his or her neighbors, passers-by and others in proximity. I do not believe the legislature meant to allow the keeper of the dog to avoid strict liability to his or her neighbors, passers-by or others in proximity by pointing a finger at someone else and arguing that at that certain moment in time, even though the dog was still within the perimeter of the homeowner's property, he or she had temporarily

_____

choice to place the burden of damage caused by a dog on the dog's owner."); *Koetting v. Conroy,* 223 Wis. 550, 555, 270 N.W. 625 (1936) (the purpose is to protect against "injury by dogs by whomsoever the dogs are kept or harbored, and to make a person who keeps or harbors a dog responsible for all injuries inflicted by it . . ."); *Fire Ins. Exch. v. Cincinnati Ins. Co.,* 2000 WI App 82, ¶ 17, 234 Wis. 2d 324, 610 N.W.2d 98 (the statute "assign[s] responsibility to those in a position to protect innocent third parties from dog bites").

stopped being the keeper. To allow such a result would be to drown the statute in a sea of minutiae.[60]

¶ 78. For the reasons set forth, we conclude that Ms. Seefeldt was a statutorily defined owner of the dog under Wis. Stat. § 174.02 at the time of the dog bite. She was a person who harbored the dog. Her status as a harborer of the dog was not extinguished when the dog's legal owner took momentary control of the dog. We also conclude that the traditional public policy factors that may preclude tort liability do not bar recovery in the present case. Accordingly, we affirm the decision of the court of appeals.

¶ 79. *By the Court.*—The decision of the court of appeals is affirmed.

---

[60] *Pawlowski,* 315 Wis. 2d 799, ¶ 30 (Brown, C.J., concurring).