**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 18, 2025**

**Samuel A. Christensen
Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2345**

**STATE OF WISCONSIN**

Cir. Ct. No. **2023SC726**

**IN COURT OF APPEALS
DISTRICT IV**

FIRST NATIONAL BANK OF OMAHA,

   PLAINTIFF-RESPONDENT,

 V.

KIMBERLY K. KRAUSS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Jefferson County: BENNETT J. BRANTMEIER, Judge. *Affirmed*.

¶1    GRAHAM, J.[1]  Kimberly Krauss appeals a money judgment in favor of First National Bank of Omaha (the Bank).  I affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

¶2    Krauss has a credit card account with the Bank.  Starting in November 2022, Krauss failed to make payments as they became due.  It is undisputed that Krauss did not make the payments that were due on November 9 and on December 9.  It is further undisputed that on December 14, the Bank sent a notice informing Krauss that she was in default.  The notice stated that, to cure the default, Krauss was required to pay the past due amount by December 29, 2022.  Krauss did not pay the past due amount or make any further payments on the account.

¶3    The Bank filed a small claims action seeking a money judgment against Krauss.  In Krauss's answer, she alleged that the Bank failed to provide a proper notice before bringing the collection action, as required by the Wisconsin Consumer Act (WCA).  Krauss also filed a counterclaim, alleging that she was entitled to remedies under the WCA.

¶4    The Bank moved for summary judgment.  Along with its motion and brief, the Bank submitted an affidavit with the credit card statements and the December 14, 2022 notice.  The motion for summary judgment argued that Krauss had defaulted on the account; that the Bank provided her with a notice of default and the right to cure, as required by WIS. STAT. § 425.104; and that Krauss had not cured the default.  Therefore, the Bank argued, it was entitled to judgment as a matter of law.

¶5    In her brief opposing summary judgment, Krauss argued that she was not actually in default at the time the Bank sent the December 14, 2022 notice.  Krauss's argument turns on the language of WIS. STAT. § 425.103(2), which defines "default" for purposes of different consumer credit transactions.  And more specifically, Krauss's argument turns on whether her credit card

account is an "open-end plan," as that term is used in § 425.103(2). If the account is not an "open-end plan" governed by § 425.103(2)(b) and is instead a "transaction other than an open-end plan" governed by § 425.103(2)(a), then Krauss was not yet in default on December 14, when the Bank sent the notice. And if Krauss was not in default at that time, then the notice did not satisfy the WCA's prerequisites for commencing suit. *See **Indianhead Motors v. Brooks***, 2006 WI App 266, ¶¶13-14, 297 Wis. 2d 821, 726 Wis. 2d 352 (providing a notice that satisfies the timing and content requirements of the WCA is a prerequisite to legal action).

¶6　　In an oral ruling, the circuit court granted summary judgment in the Bank's favor. The court determined that the credit card account was an "open-end plan" governed by WIS. STAT. § 425.103(2)(b), and that Krauss was in default under that statute at the time the Bank sent its notice. The court entered a money judgment in the Bank's favor. Krauss appeals.[2]

¶7　　Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). For

---

[2] The parties' briefs do not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended to its current form in 2021, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when accepted for efiling. The pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. Supreme Court Note, 2021, RULE 809.19.

purposes of this appeal, it is undisputed that the credit card account is governed by the WCA. It is also undisputed that Krauss is a "customer" and the Bank is a "merchant" as those terms are defined in the WCA. And it is undisputed that Krauss failed to make the payments that were due on November 9 and December 9, 2022, and that the Bank sent a notice of right to cure on December 14, shortly after the second missed payment.

¶8 As mentioned, the crux of the parties' dispute is whether the credit card account is considered an "open-end plan" or a "transaction other than one pursuant to an open-end plan," as those terms are used in WIS. STAT. § 425.103(2). This presents a matter of statutory interpretation, which is a question of law. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852.

¶9 WISCONSIN STAT. § 425.103(2) sets forth rules on how to determine the date on which a consumer credit transaction is in "default." This determination matters because, as noted, the WCA requires a creditor to send a notice that satisfies the timing requirements of § 425.103(2) and related statutes as a prerequisite to commencing a collection action. *Indianhead Motors*, 297 Wis. 2d 821, ¶¶13-14; *see also* WIS. STAT. § 425.105(1). Section 425.103(2) provides, in relevant part:

> (2) "Default", with respect to a consumer credit transaction, means without justification under any law:
>
> (a) With respect to a *transaction other than one pursuant to an open-end plan* and except as provided in [a paragraph that addresses certain installment and payday loans]; if the interval between scheduled payments is 2 months or less, to have outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the scheduled or deferred due dates, or the failure to pay the first payment or the last payment, within 40 days of its scheduled or deferred due date …;

....

> (b) With respect to *an open-end plan*, failure to pay when due on 2 occasions within any 12-month period[.]

(Emphasis added.)

¶10 Applying these definitions here, if the credit card account is an "open-end plan" as the Bank contends, then Krauss was undisputedly in default as of December 10, 2022. That is because she did not make the payments that were due on November 9 and December 9; therefore, as of December 10, she had "fail[ed] to pay when due on 2 occasions within [a] 12-month period." *See* WIS. STAT. § 425.103(2)(b). However, if the account is not an "open-end plan" after all, then Krauss may not have been in default until December 20, when there was "an amount exceeding one full payment which has remained unpaid for more than 10 days." *See* § 425.103(2)(a).

¶11 Krauss agrees that her credit card account falls within the WCA's definition of an "open-end *credit* plan." *See* WIS. STAT. § 421.301(27) (emphasis added);[3] *see also* § 421.301(15) (defining the term "credit card" to mean a credit

---

[3] More specifically, the WCA defines "[o]pen-end credit plan" as

> consumer credit extended on an account pursuant to a plan under which:
>
> 1. The creditor may permit the customer to make purchases … from time to time, directly from the creditor or indirectly by use of a credit card, check or other device, as the plan may provide;
>
> 2. The customer has the privilege of paying the balance in full or in installments;
>
> 3. A finance charge may be computed by the creditor from time to time on an outstanding unpaid balance; and

(continued)

device extended "pursuant to an open-end credit plan").[4] Accordingly, if the term "open-end plan" as used in WIS. STAT. § 425.103(2) means the same things as "open-end credit plan" as defined by the WCA, then § 425.103(2)(b) governs the method for calculating the date of Krauss's default.

¶12 Krauss argues that her credit card account is not governed by WIS. STAT. § 425.103(2)(b) because, she asserts, the terms "open-end credit plan" and "open-end plan" mean different things. That is, although Krauss acknowledges that her credit card account is an "open-end credit plan," she contends that it is not an "open-end plan" for purposes of determining the date of default under § 425.103(2)(a) and (b).

¶13 In furtherance of this argument, Krauss points out that, unlike the term "open-end credit plan," "open-end plan" is not specifically defined anywhere in the WCA. In the absence of a WCA definition, Krauss argues, one must look to other chapters of the Wisconsin Statutes for the definition.

¶14 Here, Krauss identifies a statutory definition that is found in WIS. STAT. ch 766, which addresses marital property and the property rights of married persons. More specifically, WIS. STAT. §§ 766.55 and 766.555 set forth rules about when obligations that were incurred by one spouse can be satisfied from

---

4. The creditor has treated the transaction as open-end consumer credit for purposes of any disclosures required under the federal consumer credit protection act.

WIS. STAT. § 421.301(27).

[4] In full, "[c]redit card" is defined as "any card, plate, merchandise certificate, letter of credit, coupon book or other like credit device existing for the purpose of obtaining money, property, labor or services pursuant to an open-end credit plan." WIS. STAT. § 421.301(15).

martial property. And § 766.555(1)(a) and (b) provide a definition of "open-end plan" for purposes of "this section." Section 766.555(1)(a) sets forth a definition that resembles the WCA's definition of "open-end credit plan."[5] And § 766.555(1)(b) further specifies that, "[i]n this section," the term "'[o]pen-end plan' includes only those open-end plans entered into by a person whose spouse is not a party to the account." The remaining provisions in § 766.555 set forth rules about when obligations incurred under an "open-end plan" (that is, a plan "entered into by a person whose spouse is not a party to the account") can be satisfied from marital property. *See, e.g.*, § 766.555(2)(b), (c), (3)(b), (c).

¶15    Krauss argues that WIS. STAT. § 766.555's definition of "open-end plan" must be imported into the WCA. Once it is, Krauss contends, her credit card account cannot be considered an "open-end plan" for purposes of determining her date of default because there is no evidence that she has a "spouse [who] is not a party to the account." *See* § 766.555(1)(b). Therefore, Krauss argues, WIS. STAT. § 425.103(2)(a), which sets forth the method for calculating the default date of a consumer credit "transaction other than one pursuant to an open-end plan," governs the method for determining when Krauss was in default.

¶16    If Krauss's argument seems difficult to follow, it is because the argument does not hold together well. To be sure, WIS. STAT. § 425.103(2) uses a term, "open-end plan," that is not identical to the WCA-defined term "open-end credit plan." And, when the legislature chooses to use different words as part of

---

[5] More specifically, WIS. STAT. § 766.555(1)(a) provides that, "[i]n this section," "'[o]pen-end plan' means credit extended on an account pursuant to a plan under which the creditor may permit a spouse to make purchases … from time to time, directly from the creditor or indirectly by use of a credit card, check or other device, as the plan may provide."

the same statutory scheme, we generally presume that the legislature intended the words to be given different meanings. *Pawlowski v. American Fam. Mut. Ins. Co.*, 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67. Even so, I am not persuaded that the legislature intended § 425.103(2)'s references to "open-end plan[s]" to mean something other than the "open-end credit plan[s]" that are defined by WIS. STAT. § 421.301(27). I reach this conclusion for at least the following reasons.

¶17 First, although the drafter did not use the word "credit" when referring to "open-end plan[s]" in WIS. STAT. § 425.103(2)(a) and (b), the word "credit" is part of the introductory language of § 425.103(2). More specifically, § 425.103(2) addresses all kinds of "consumer credit transaction[s]," and § 425.103(2)(b) sets forth the rule for those "consumer credit transaction[s]" that are "open-end plan[s]." Perhaps a more careful drafter would have used the full term "open-end credit plan" in § 425.103(2)(b) and, in so doing, would have left no room for argument. However, given that the introductory language expressly refers to "credit transaction[s]," the drafter may have considered it redundant to add the word "credit" into the text of § 425.103(2)(b). And, given that the WCA does not provide an alternative definition of "open-end plan," the drafter may have determined that there would be no risk of confusion. In any event, whether the omission of the word "credit" was intentional or inadvertent, there is no indication in the WCA that § 425.103(2)'s references to "open-end plan[s]" were meant to refer to anything other than "open-end credit plan[s]."

¶18 Second, I do not agree that the definition of "open-end plan" from the marital property chapter of the Wisconsin Statutes can be imported into WIS. STAT. § 425.103(2). My conclusion is based on the text of WIS. STAT. § 766.555(1) and the interpretive principles that statutory language should be

8

interpreted reasonably and consistent with its purpose. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶46, 48, 271 Wis. 2d 633, 681 N.W.2d 110 (statutory language should be "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely related statutes; []reasonably, to avoid absurd or unreasonably results;" and consistent with its ascertainable purpose).

¶19    As for text, WIS. STAT. § 766.555(1) unambiguously provides that its definition applies "[i]n this section"—that is, § 766.555.  This means, it would seem, that the legislature intended that the definition be limited to the subject addressed in § 766.555—namely, a set of rules for determining whether obligations that a spouse incurs under an "open-end plan" can be satisfied from marital property.  Indeed, in the context of a statute addressing the obligations of spouses, it makes sense that the applicable definition would turn on whether an account holder's spouse is party to the account—if both spouses are party to an account, there would seem to be no need for the application of nuanced rules on that subject.

¶20    There is nothing in the text of WIS. STAT. § 766.555 that suggests that its definition of "open-end plan" was meant to apply more broadly to other statutory chapters that address other subjects and have other purposes.  And indeed, WIS. STAT. § 425.103(2) serves a very different purpose—to provide clear rules about when a customer has defaulted on a consumer credit transaction.  In the context of § 425.103(2), a distinction based on marital status and whether a person's spouse is party to the account would undermine this evident purpose, and would instead promote arbitrary differences in when a default occurs.  That is, there is no discernible reason that a customer like Krauss would be in default after her second missed payment if she was married and her spouse was not party to the

credit card account, but a customer who was not married (or who was married and had a joint account with her spouse) would not be in default until ten days later.

¶21     For all of these reasons, I conclude that Krauss's credit card account was an "open-end plan" for purposes of WIS. STAT. § 425.103(2)(b), and that Krauss was in default on December 14, 2022, when the Bank sent its notice of default.   Therefore, I conclude, the circuit court properly granted summary judgment in the Bank's favor and properly entered a money judgment against Krauss.

*By the Court.*—Judgment affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)4.